# BALTIMORE FIRE INSURANCE COMPANY vs. WM. McGOWAN and JOHN C. McGOWAN.

An insurance policy, under seal, was issued to *"J. McGowan & Sons,"* for one year, with a covenant that it should continue so long as the "assured or their assigns" shall pay the premium, and the company shall accept and receive the same from them. At the time the policy was issued, the firm of "J. McGowan & Sons" was composed of the plaintiffs *and another party,* who retired from the firm during the *first year,* and the business was conducted by the plaintiffs under the same name. The day preceding the expiration of the policy, the premium for the *second year* was paid, and a renewal receipt endorsed upon the policy, stating that the company had received the premium from "J. McGowan & Sons," under the policy *"which is hereby continued in force"* for another year. A loss occurred, during the *second year,* and upon an action by the *plaintiffs* to recover therefor; HELD:

1st. That the renewal receipt is not a *parol* and *new* contract with *other parties,* on which an action of *assumpsit* may be brought, but is simply an extension, for another year, of the original *sealed* contract, and the *plaintiffs,* not being the covenantees nor their assignees, cannot maintain an action of *covenant* upon the policy.

2nd. But, whether specialty or parol, no action can be maintained on the contract, except by the *parties insured;* it is a *joint* contract and whatever sum could be recovered would be *in solido,* and no one of the parties insured can sue alone for his proportion; these *plaintiffs,* therefore, cannot maintain the action.

An amendment of the *writ* and *nar.,* so as to change them from *covenant* to *assumpsit,* may, under the Act of 1852, ch. 177, be allowed to be made *at the trial.*

APPEAL from the Superior Court of Baltimore City.

In this case an action of *covenant* was brought on the 8th of September 1855, by the appellees, upon a policy of insurance issued by the appellant. Plea *non infregit.*

*Exception.* The policy offered in evidence by the plaintiffs, under seal and dated the 22nd of October 1853, insured *"J. McGowan & Sons,"* to the amount of $6000, *"on stock of groceries,"* in a certain warehouse, for one year from date, to expire at noon on the 22nd of October 1854, with a covenant "that this insurance shall continue and be in force from the expiration of the time before mentioned for its duration, so long as the said assured, or their assigns, shall continue to

pay the like rate of premium as hath been paid for this insurance, and so long as this corporation shall agree to accept and actually receive the same from the assured, or their assigns; *Provided,* that the permium for a continuance of the insurance, shall be actually paid for by the assured, or their assigns, to this corporation, before the day limited for the termination of the risk, and such payment endorsed on this policy, or a receipt therefor given by this corporation," and with a condition that, "this policy is not assignable unless by consent of the corporation, manifested in writing." The plaintiffs, also, offered in evidence the following renewal receipt endorsed on the policy, dated the 21st of October 1854, and signed by the secretary of the company, who, it was admitted, was authorized to make such renewals of policies:

"Renewal receipt for policy No. 12,704.—Received $36 from *J. McGowan & Sons,* being the premium on six thousand dollars, insured by the Baltimore Fire Insurance Company, under policy No. 12,704, which is hereby continued in force, and which will terminate at 12 o'clock noon, on the 22nd day of October 1855."

When the policy was issued, the firm of "John McGowan & Sons" consisted of John McGowan, and the plaintiffs, William McGowan and John C. McGowan, but on the 2nd of May 1854, John McGowan retired from the business and firm, and from that date the plaintiffs carried on the business on their own account, under the old name of "John McGowan & Sons." The fire and loss occurred on the 9th of December 1854, and evidence was taken on both sides, as to waiver of preliminary proof, the business carried on by the plaintiffs, the amount of loss, and other matters which need not be stated.

After the evidence was closed, the defendant offered two prayers, denying that the plaintiffs could maintain *this suit* in their own names, which being admitted by the plaintiffs to be correct, were granted. The plaintiffs then asked leave to amend the *writ* and *nar.* from *covenant* to *assumpsit.* The defendant objected to the proposed amendment, but the

court (LEE, J.) granted the leave and the amendment was made at the bar, without withdrawing a juror, by an agreement to consider the *nar.* as a *nar.* in *assumpsit*, and the plea as a plea of *non assumpsit*. After this amendment was made the jury were again sworn, and the defendant offered its 3rd, 4th and 5th prayers, in substance as follows:

3rd. That if the jury find that in giving the renewal receipt, the secretary meant and intended to renew the policy in the name and for the benefit of the same persons who were therein assured, and neither he or any of the officers or agents of the defendant were notified, or had knowledge that John McGowan had previously retired from the firm of John McGowan & Sons, then the agreement to renew must be taken and considered as an agreement made with said John McGowan and the plaintiffs, and not merely as an agreement with the plaintiffs.

4th. That if the jury find the facts set forth in the third prayer, then the plaintiffs are not entitled to recover without the conjunction of the said John McGowan as a plaintiff.

5th. That if the jury find the facts set forth in the third prayer, then the plaintiffs are not entitled to maintain an action of *assumpsit* on said receipt, unless it be shown in evidence, and found by the jury, that the defendant was applied to for a policy to be sealed and delivered in accordance with the terms of said receipt, and refused or declined to seal and deliver such policy.

The court rejected these prayers and granted the two prayers offered by the plaintiffs, relating, the one to waiver of preliminary proof, and the other to the construction of the policy with reference to the use to which the warehouse was appropriated by the plaintiffs. To this ruling the defendant excepted, and, the verdict and judgment being against it for $3570 damages, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

7    v.16

*Wm. Schley,* for the appellant, argued: ·

1st. The order of the court below, permitting the amendment to be made at bar, from covenant to *assumpsit*, was irregular and improper, and the objection, as it appears upon the record, is clearly open for review on this appeal. The Act of 1852, ch., 177, allows amendments to be made to promote the ends of justice, but the discretion thereby given to the courts is not a mere arbitrary discretion, which cannot be reviewed on appeal, for if it were so, an amendment might be made in the face of the ends of justice, and there would be no redress. Nor is there any valid objection to the form in which the question is presented. It was not a subject of exception—the objection was made and it comes up with the record, and is now open for review. 1 *Md. Rep.,* 77, *Lawson vs. Snyder.* 7 *G. & J.,* 109, *Botcler & Belt vs. The State.* The action being on the original policy, it was not competent to change it into a new suit by declaring upon the renewed policy as an agreement between other parties. 8 *Sergt. & Rawle,* 53, *Wilson vs. Wallace.* 2 *Fairfield,* 127, *Winslow vs. Merrill.* 5 *Greenlf.* 379, *Redington vs. Farrar.*

2nd. The original policy was a deed. The parties thereto were the insurer and *insured.* The insured were the persons composing *the firm* of John McGowan & Sons, who were confessedly three in number, John McGowan being one. Now the renewal of the policy but extended the *same contract* for a further time. The receipt was not, *in itself,* a policy; it was not in and of itself an insurance. It was evidence of a collateral fact, which fact existing, *the policy* continued to operate, precisely as if it had originally been issued for the whole extended term. It was a contract, therefore, between the Insurance Company of the one part, and the three persons who were assured, when the policy was issued. It is impossible that what was in October 1853, a contract with three persons, should, by any just rules of interpretation be construed as a contract with only two of these persons. Nor can it be said that the receipt is, of itself, the foundation of the suit. By the terms of the policy it is *cove-*

*wanted*, that the policy is to continue so long as the premium is paid. This policy is under seal, and, by its charter, (Act of 1807, ch. 68,) this company can insure only under its common seal. The case might be different, if the policy had been applied for pursuant to the receipt, (assuming the receipt to have been intended as applying only to the plaintiffs,) and the company had refused to issue it. But, even in that case, a parol agreement by this company to insure would only be an agreement to issue a policy under seal, enforcible only in a court of equity. As to the effect of this renewal see 2 *Whart.*, 167, *Luciani vs. American Fire Ins. Co.* If these views are correct, the defendant's prayers should have been granted.

*Robert J. Brent*, for the appellees, argued:

1st. The amendment was clearly within the Act of 1852, ch. 177, which allows, for the furtherance of justice, amendments of any of the proceedings, including the writ or summons from one form of action to another, to be made at any time before the jury retire to make up their verdict, and that such amendments shall not operate a continuance of the case unless the court shall be satisfied that the ends of justice require a continuance. The action was upon the renewal of the policy which was not under seal, and therefore, covenant would not lie. There could be no recovery in covenant, the fire having occurred after the parol renewal. It was, therefore, proper that the action should be changed from covenant to *assumpsit*. But amendments are within the sound discretion of the court, and its action on such matters cannot be reviewed on appeal. Again, no exception was taken to the power of amendment as exercised; an objection was made but no exception was taken, and the question is not, therefore, before this court.

2nd. The renewal of the policy not being under seal, but by the simple receipt of the company's secretary, it results that the renewed policy could only enure to the benefit of the plaintiffs, who paid the premium, and who renewed it under the name in which they were doing business. This

question cannot be affected by considering who were the parties entitled to sue upon the original policy, nor by the meaning and purpose of the company's secretary, as supposed in the defendant's third prayer. The fact, that John McGowan had withdrawn from the firm, was a matter of no moment to the company; its object was the premium, and it would have insured the sons as readily as the father and sons. There is nothing in the policy which required partners, when they insure, to disclose their names. The name of the firm was "J. McGowan & Sons," and the parol agreement to renew the policy, was made with the parties then constituting that firm, who were the plaintiffs alone. But this receipt was a *parol* and new contract, and not an extension of the policy for another year; it refers to the previous policy only to show what the new agreement was. That an action of *assumpsit* will lie upon such a renewal is established by the case of *Luciani vs. American Fire Ins. Co.*, 2 *Whart.*, 167, cited on the other side. There was no error, therefore, in the rejection of the defendant's prayers.

*Note.*—The argument on other points is omitted.

LE GRAND, C. J., delivered the opinion of this court.

This was, originally, an action of *covenant* brought by the appellees, on a policy of insurance, issued by the appellants. The policy was dated the 22nd of October 1853, and on a stock of groceries. It was for one year, with the privilege of renewal, so long as the company should continue to receive the premium on the risk. During the first year the premium was paid for the second year. The loss took place on the 9th of December 1854, and the suit was brought by *the appellees* to recover its amount. The policy was issued to *J. McGowan & Sons*. At the time of its issual, the firm of J. McGowan & Sons was composed of J. McGowan *and* the appellees. John McGowan retired from the business and firm, on the 2nd of May 1854, the business being conducted thereafter by the *appellees*, (William and John C. McGowan,) under the name of John McGowan & Sons.

At the trial, on the motion of the plaintiffs' counsel, the court allowed the writ and *nar.* to be so amended as to change them from *covenant* to *assumpsit.* To the allowance of this amendment, the appellants excepted. The record shows, that after the amendment was made, the jury were sworn "to say the truth in the premises," between the plaintiffs and the defendants. The Act of 1852, chapter 177, section 1, is without limitation as to the power of the court to permit amendments to any proceedings, including the writ or summons, so that the case may be tried on its real merits, and the purposes of justice subserved. It expressly provides, that writs may be amended from one form of action to another, when the ends of justice require it. We do not think the court exceeded its power in granting the application of the plaintiffs.

There was much said, both in the evidence and arguments of counsel, in relation to preliminary proof, to the comprehensiveness and meaning of the word "groceries," and other matters, which need not be commented upon, because, we are of opinion the appellees cannot recover in this action for any loss intended to be insured against by the appellants.

The policy underwritten is a *sealed* instrument. The company had no authority to issue any other than a sealed policy. The 10th section of its charter, the Act of 1807, chapter 68, declares, "that *all* policies of insurance made by this corporation shall be signed by the president, and attested by the secretary, and *sealed* with the common seal, and all losses on any such policy or policies shall be adjusted by the president and board of directors, and paid, agreeably to the terms of the policy, out of the funds of the company."

This prohibition, if there were none other, would be a sufficient answer to the plaintiffs right of recovery in this action. In the case of *The Penn. & Maryland Steam Navigation Co. vs. Dandridge,* 8 *Gill & Johnson,* 318, the court, adopting the doctrine as laid down in *Angell and Ames on Corporations,* observes "that a corporation and an individual stand upon very different footing. The latter, existing for the

general good of society may do all acts and make all con-tracts which are not, in the eye of the law, inconsistent with the great purpose of his creation; whereas, the former having been created for a specified purpose, cannot only make *no contract forbidden by its charter*, which is, as it were, the law of its nature, but, in general, can make no contract which is not necessary, either directly or incidentally, to enable it to answer that purpose." Substantially the same principles was adopted in *Albert and wife vs. Savings Bank and others*, 2 *Md. Rep.*, 159. But, in addition to this, the language of the policy and of the renewal receipt is a conclusive bar to the plaintiffs recovery. The policy provides that *"this* insurance shall *continue* and be in force *from* the *expiration* of the time before mentioned for its duration, so long as the said assured, or their assigns, shall continue to pay the like rate of premium, as hath been paid for this insurance, and so long as this corporation shall agree to accept, and actually receive, the same from the assured," &c.

The plaintiffs claim that the renewal receipt was a *parol* and new contract, and not an extension for another year of the original sealed one. This view cannot be sustained by the receipt. It is just as positive the other way as is the policy. It expressly declares that, the premium is received under the original policy, and that, by it, the *policy* is *"continued* in *force,* and will terminate at 12 o'clock, noon, on the 22nd day of October 1855."

The case of *Luciani vs. The American Fire Insurance Co.,* 2 *Wharton,* 167, is not available for the purpose for which it was cited at the bar. All that case decided was, that an action of *covenant* could not be sustained by virtue of endorsements on the policy, not under seal, to the effect that the insurance had been enlarged as to the amount as also the premium. It was held that these endorsements did not continue the policy as a *specialty,* but that the plaintiff might have demanded a policy in conformity with the clause in the policy, or, *perhaps,* as suggested by *C. J. Gibson,* without deciding it, he might maintain *assumpsit.* That case is dis-

tinguishable from this in the fact, that there was not in it, as there is in the present one, a contract under seal for the *continuance* of the *policy*. Here the receipt does not evidence a new contract, but an extension of the original. By the *covenant* between the parties, the policy was to be for one year, or longer, on payment of the premium. There is nothing in the receipt to show, that there was a new contract of insurance with *other* persons, yet, other persons, not the original covenantees are here seeking to recover upon the policy. The plaintiffs are neither the covenantees nor their assignees. It is impossible, on the face of the plaintiffs' own evidence to hold, that the contract of insurance, from the 22nd of October 1854 until the 22nd of October 1855, was by parol. The only evidence on the point is all one way, and is clear, that the original sealed contract was not replaced by another and different one, but, *continued in force*. But, whether specialty or parol, no action could be maintained on the contract except by the parties insured. It is a *joint* contract, and whatever sum could be recovered would be *in solido;* "a contract with several persons, for the payment to them of a sum of money, is a joint contract with all, and all the payees have therein a joint interest, so that no one can sue alone for his proportion." 1 *Parsons on Contracts*, 13.

If these views be correct then it follows that, the court erred in the rejection of the defendant's third, fourth and fifth prayers, and in granting the plaintiffs' prayers. The defendant's prayers denied the right of these plaintiffs to recover and were in their nature demurrers to the sufficiency of the evidence.

We abstain from all comment upon the merits of the claim or those of the defence, or of the degree of credibility which ought to be assigned to the conflicting testimony of the witnesses. The objection to the action is one founded in the rules of the law, and however hard they may bear in any particular case, it is not for the courts to infringe on their efficiency.

*Judgment reversed.*

---

*Per Justices* Eccleston and Bartol:—In regard to so much of the opinion of the Chief Justice as denies the right of the appellants to bind themselves by a policy not under seal, we express no opinion.

