## ILLIAN, EXECUTRIX *v.* NORTHWESTERN NATIONAL INSURANCE COMPANY

[No. 137, September Term, 1957.]

508

*Decided February 26, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*W. G. Boyce, Jr.,* with whom were *Musgrave, Preston & Boyce* and *Malcolm J. Coan* on the brief, for appellant.

*Ward B. Coe, Jr.,* with whom were *G. C. A. Anderson* and *Anderson, Barnes & Coe* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

This appeal is from a summary judgment for a defendant insurance company in a suit by the executrix of one of three partners in a dress shop to recover loss from fire.

Demurrers to two declarations were sustained, and a second amended declaration was filed in three counts. The first count alleged that the defendant had issued its policy to "Anne Grove: Arvella Farley: and Helen Houser, t/a Shelda's Gown Shop and legal representatives," insuring against loss by fire; that fire occurred on December 31, 1954, while the policy was in force, causing loss in the maximum sum for which the property was insured; that Houser retired from the business prior to the fire; that Farley and Grove agreed to dissolve the partnership on the happening of the fire; that Farley told Grove that "she was not interested in taking legal steps to collect monies due from the Defendant and that she preferred that Anne Grove or her legal representative collect such monies and pay the bills of Shelda's Gown Shop, and waived and assigned all interest that she might have in the assets, if any, of the Shop, to Anne Grove and her representative"; that Grove died on April 18, 1955, naming Margaret Ann Illian as her duly qualified executrix, and that Illian as executrix, "having succeeded to all the right, etc. of Anne Grove" has entered suit against the defendant. The third count was substantially the same as the first, except that it alleges that Farley had "given the assignment of her claim against said Defendant" to Illian, as executrix, rather than to Grove and her legal representative. Demurrers to the first and third counts were sustained.

The second count alleged that by the terms of the insurance policy "the Defendant agreed to pay to Anne Grove or her legal representative upon proof of fire loss within one year from the date thereon," any loss by fire; that Grove had died, leaving Illian as her executrix; that Illian, as legal representative of Grove, was entitled to payment for the loss insured against. A demurrer to this count was overruled.

The insurance company then filed a plea in abatement to the count, alleging that the policy did not insure "Ann Grove or her legal representative" but did insure "Anne Grove, Arvella Farley and Helen Houser, t/a Shelda's Gown Shop" and that "said three persons constituted a partnership, joint enterprise or otherwise were joint obligees or contractees under said policy;" that Farley and Houser survived Grove and no reason had been averred why they were not parties plaintiff and that they should have been named as parties plaintiff, and that "the plaintiff named has no right to bring this action." The replication to the plea in abatement to the second count sets out verbatim those insured as the policy set them out—*i. e.,* "Ann Grove: Arvella Farley: and Helen Houser, t/a Shelda's Gown Shop and legal representatives," so as to show that the punctuation made the contract separate not joint, and alleges that Houser was not a partner at the time of the fire, and that Farley has refused to join in the action and is now precluded by the contract from so joining (a reference to the policy provision requiring suit within one year) ; and that creditors of Shelda's Gown Shop have made claims against the Estate of Anne B. Grove. The insurance company demurred to the replication, saying that the punctuation relied on to show that the contract was a separate one is not controlling, and that the replication states no legal defense to the plea in abatement. Thereafter, the defense moved for summary judgment, filing in support an affidavit of the manager of its Baltimore office. Attached to the affidavit was a duplicate of the policy sued on—the original could not be found—and a photostatic copy of the proof of loss, executed February 25, 1955, in which Grove, Farley and Houser each swore, over her signature, that she and the other two were the owners of the dress shop and that there had been no assignment or change of interest since the issuance of the policy. The fire policy provided that "Assignment of this policy shall not be valid except with the written consent of this company" and that "no suit or action on this policy * * * shall be sustainable in any court of law or equity * * * unless commenced within twelve months next after inception of the loss."

No question is now raised as to the pleadings or as to the propriety of the method by which there was put at issue the question of whether a cause of action was stated by the second count. There is no real dispute as to any material fact. The appellant contends that in one or more of the counts of the declaration she has alleged a cause of action, either as the personal representative of a deceased partner who had been settling the affairs of the partnership or as the assignee of the only surviving partner, and, in the alternative, that she be allowed to amend to bring in the surviving partners as parties plaintiff with her. The appellee counters that she has stated no cause of action whatever and has no right to amend.

It was conceded at the argument that the three ladies were partners in the operation of the dress shop; this was admitted by Illian in answers to interrogatories, and is stated to be the fact in a deposition given by Grove to the State's Attorney for Baltimore County in the course of an investigation as to whether there was arson in connection with the fire (excerpts from her deposition are attached as an exhibit to the motion for summary judgment). It was conceded also at the argument that the insurance policy required any suit to be instituted within one year from the fire, that the original declaration was filed only two days before the expiration of that year, that the original declaration was filed by Illian as executrix and not as assignee on the allegations and theory that as executrix she succeeded to Grove's right to wind up the partnership and that no assignment was executed until some months after suit was filed.

We think the demurrers to the first and third counts of the second amended declaration properly were sustained. They allege the policy was issued to three named individuals who admittedly were partners. In *Baltimore Fire Ins. Co. v. McGowan,* 16 Md. 47, 55, a similar policy was held to be a joint contract, and the Court adopted as the law the following statement from 1 *Parsons, Contracts* 13: " 'a contract with several persons, for the payment to them of a sum of money, is a joint contract with all, and all the payees have therein a joint interest, so that no one can sue alone for his

proportion.'" See also *Cearfoss v. Wolfinger,* 195 Md. 49, 54, where the quoted language is again adopted in holding a contract to be joint and to require the same result.

The declaration alleges that Houser retired from the partnership before the fire, but the proof of loss signed and sworn to by her states that she was an owner at the time of the fire and that there had been no change of ownership since the issuance of the policy. Looking only to the allegations of the declaration, the situation is not different from that of the *McGowan* case, just referred to. There, suit had been filed by two remaining partners and a partner who had retired did not join in. The Court held that the suit would have to be by all who were partners at the time the insurance policy was issued. See 1 *Poe, Pleading and Practice* (Tiffany's ed.), Sec. 318. He there says: "Accordingly, in suits upon partnership transactions, all the partners should join, for the reason that their legal interest is joint; * * *. Where a partnership is dissolved by the withdrawal of a member, his name must still be used in suits upon contracts with the firm during his membership, and he has no right to object to such use, upon being indemnified against the costs." See, too, Sec. 352 where it said that where one of several partners dies his legal interest in a partnership contract devolves on the surviving partners and that the personal representative can not join in the action. *Restatement, Contracts,* Sec. 132; 4 *Corbin, Contracts,* Sec. 939 at 783-784. The Uniform Partnership Act, Code, 1951, Art. 73A, Sec. 30, provides that a partnership is not terminated by dissolution but continues until the winding up of partnership affairs is completed. Whether the partnership is regarded as dissolved at the time Houser withdrew, or after the fire, or upon Grove's death, Farley and Houser, who concededly still live, remained partners to wind up the partnership. Houser, certainly at the time she executed the proof of loss, regarded herself as still a partner. The Partnership Act recognizes in Art. 73A, Sec. 25 (2) (d) that rights in specific partnership property vest in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in such property vests in his legal representative. The law is

set forth in 40 *Am. Jur., Partnership*, Sec. 296: "For many purposes a surviving partner is considered the legal owner of all the property and assets belonging to the partnership, with power to sell or transfer them. The heirs of the deceased partner have no interest, as such, in the property of the firm. Their only remedy is to compel the surviving partner to account for the surplus after the settlement of all the partnership liabilities. And in all cases it is the duty of the surviving partner to account for and pay over to the administrator of the deceased partner all the profits of the realty and personalty of the firm which rightfully belong to the estate. * * * If there is an unreasonable delay on the part of the surviving partner in closing the affairs of the partnership, or if he is wasting the partnership property, it is then the right of the personal representative of the deceased to file a bill calling the survivor to account, and in a proper case a court of equity will grant an injunction restraining him from acting, and even may appoint a receiver and direct an account to be taken." This is saying in more words what the Partnership Act provides in fewer in Art. 73A, Sec. 37, when it states: "Unless otherwise agreed the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs; provided, however, that any partner, his legal representative, or his assignee, upon cause shown, may obtain winding up by the court."

It is clear that Illian could have required Farley or Houser, or both, to settle the partnership affairs, including the making of the claim for the insurance proceeds, and that if they had refused, could have appealed to an equity court for the appointment of a receiver. The personal representative of a partner who was not the last surviving partner has only a claim to the share of her decedent in the partnership. She has no title to, or right to sue for, specific assets, or to wind up the partnership.

The language of the first count of the second amended declaration that Farley made it known to Grove "that she preferred that Anne Grove or her legal representative collect such monies and pay the bills of Shelda's Gown Shop" and

"waived and assigned all interest she might have in the assets" to Grove, is somewhat indefinite. Assignment of the policy is prohibited by its terms without the consent of the company. The assignment by a partner of his interest in a specific partnership property is prohibited by Art. 73A, Sec. 25 (2) (b). If the assignment was intended, as it perhaps was, as an assignment of all of Farley's interest in the partnership, there remains the difficulty to which we have referred before, that there is no claim of assignment from Houser. Even more fundamental is the difficulty for the appellant that concededly she did not sue originally as an assignee but as the personal representative of a partner who, during her lifetime, had undertaken liquidation and that she did this when there was at least one other partner available to undertake the liquidation the law made it her duty to undertake. The assignment was sought and obtained only after expiration of the year within which the suit had to be brought under the terms of the policy, and we think that, having sued in one capacity and one right, the appellant cannot during the course of the litigation, after the cause of action became barred, become entitled to sue in another capacity and under another right by then taking an assignment. At the time the suit was filed, there was no assignment at all, merely a refusal to act on the part of Farley and acquiescence on her part that Grove or Illian should wind up the affairs of the partnership. Thus, at the time of the institution of suit and until after limitations was a bar, Farley and Houser would have had to have been parties plaintiff in the case.

Turning to the second count, we find no error in the sustaining of the demurrer to the replication to the plea in abatement. We have pointed out that it is clear to us that the three ladies were joint contractees under the insurance policy. The only issue of fact presented by the replication is the difference in punctuation between the language of the policy as quoted in the plea in abatement and as it appears in the policy. Judge Carter, in his opinion, said: "This court fails to see how substitution of a colon for a comma can change a contract of insurance from a joint right or coverage to an indi-

vidual right." We agree. The authorities make it plain that punctuation cannot control or alter the effect of language that is plain in its meaning. *Restatement, Contracts*, Sec. 236 (b) and comment on Clause (b) at 329; 3 *Corbin, Contracts*, Sec. 552 at 113-115. Appellant makes no real point of the difference in punctuation and makes no denial of the facts asserted in the plea. Rather, she goes back to her arguments as to the first and third counts by saying that Houser was not a partner at the time of the fire and that Farley refused to join in the action. The theory of the second count as filed was that the insurance was issued to Grove alone and not to Grove jointly with others. Since the pleadings established that this was not so and that the contract was joint and since, as we have seen, the allegations of the replication constitute no legal justification for bringing suit in the name of the executrix rather than in the names of the surviving partners, it follows that the plea in abatement was good and that the replication was demurrable.

Appellant argues, after having made three efforts to present a declaration that states a cause of action, that she should now be permitted to amend so as to bring in Houser and Farley as parties plaintiff with her. She made no such request below and it is not properly before us for review. Maryland Rule 885. In any event, it is clear that Illian as executrix is not a proper party and cannot sue with the surviving partner any more than she can sue alone. 1 *Poe, Pleading and Practice* (Tiffany's ed.), Sec. 352, cited above, sets forth the law as follows: "Where one of several joint contractees, such as partners * * * dies, the legal interest in the contract devolves on the survivors, and the action should be brought in their names as such survivors, the declaration, on its face, setting forth their title, and alleging the death of the co-contractee as the reason for omitting him. If the death of one of the joint contractees occurs *pendente lite,* the suit proceeds in the name of the survivors; * * *. The personal representatives of the deceased co-plaintiff can not become parties to the suit, nor institute a separate proceeding themselves against the debtor, for the reason that at law, upon the death of one joint contractee, the right of action de-

volves upon the survivor or survivors, and this is so without reference to the question as to who has the substantial beneficial interest in the claim; the survivors will collect the claim, and are liable to the representatives of the deceased in a proper proceeding for his proportionate interest." This is said to be the law in *Restatement, Contracts,* Sec. 132 and 4 *Corbin, Contracts,* Sec. 939 at 783-784, both *supra.* Either under Code, 1951, Art. 75, Sec. 45, which was in effect when the suit was filed and when the pleadings took place, or under Maryland Rule 320 b 2 (a), now in effect, when an amendment is allowed for nonjoinder or misjoinder, some one of the original plaintiffs and some one of the original defendants must remain as parties to the action. Since Houser and Farley were the ones who should be plaintiffs and Illian, as executrix, has no right to be a plaintiff, or join in the action, there could be no amendment such as Illian requests.

The summary judgment was properly granted.

*Judgment affirmed, with costs.*