ANTHONY FRANCIS EBERT ET UX. *v.* JUDITH P.
RITCHEY, PERSONAL REPRESENTATIVE OF THE ESTATE OF
CHARLES F. EBERT ET AL.

[No. 1073, September Term, 1982.]

*Decided April 14, 1983.*

The cause was argued before GILBERT, C. J., and MOYLAN and MASON, JJ.

*Joel H. Pachino,* with whom were *Myles F. Friedman* and *Friedman, Pachino & Friedman* on the brief, for appellants.

*Clay M. Barnes,* with whom were *John E. Raine, III* and *Barnes & Raine, P.A.* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

When Charles Ebert, a childless widower, died in 1978, he left five bank accounts, totaling approximately $86,794.16, and four siblings. The interest of the siblings in and to the principal of the bank accounts is the subject of this appeal.

## The Facts

Prior to the death of Charles's wife Louise in 1976, he and she jointly owned five bank accounts. After her death Charles substituted on the accounts the name of his youngest brother, Anthony Ebert (Anthony), for that of Louise. Upon the death of Charles, Anthony took possession of the indicia of the accounts which had been physically kept by Charles. Anthony paid from the accounts Charles's last expenses. He then withdrew the balance of the monies from the accounts and deposited them in other accounts bearing his name and that of his wife, Adeline.

Despite demand from Joseph Ebert, Andrew Ebert, and Barbara Mandish, Charles's other surviving brothers and sister, as well as from Judith P. Ritchey, the personal representative of Charles's estate, Anthony and Adeline steadfastly refused to surrender all or any part of the funds. Anthony insisted that the monies had been given to him individually. Anthony did, however, divide by four the approximately $8,000 of proceeds from two insurance policies in which he was listed as sole beneficiary. He sent each of his brothers and sister a sum of slightly more than $2,000.

Eventually, a bill of complaint was instituted in the Circuit Court for Baltimore County by Ms. Ritchey, the personal representative. Among the objectives of the suit were:

a) the impression of a constructive trust upon the monies that Anthony and Adeline had received from Charles's accounts;

b) an accounting to the personal representative of the monies;

c) payment to the personal representative of all the monies received by Anthony and Adeline from Charles's accounts, together with interest and dividends earned thereon in the interim.

Following much preliminary sparring in the form of pleadings, discovery, and the like, the case went to trial on a second amended bill of complaint.

There was testimony from three witnesses as to five conversations with the decedent that occurred during the period May, 1977, through October, 1977. In the course of those conversations, Charles is said to have told the witnesses that he "put ... Tony [Anthony] in charge of things" so that Anthony "could pay all the bills and straighten out all the problems that arise with that. And ... they could take and divide up ... [the] estate ...." One witness testified that Charles said, "I don't want anything to go through Orphans' Court, so it will be gobbled up by Orphans' Court. I want everything divided up."

The testimony of Anthony, which was severely restricted by virtue of the "Dead Man's Statute," Md. Cts. & Jud. Proc. Code Ann. § 9-116, dealt with the relationship existent between Charles and Anthony accounting from their childhood. Anthony told the chancellor that he "of his own accord" split the insurance proceeds with his sister and brothers because "he felt sorry for them."

It is fair to state that the witnesses generally described the relationship between Charles and his siblings as "close." Anthony candidly acknowledges that fact.

The personal representative, Judith Ritchey, after the testimony was concluded, was allowed, over objection, to file a third amended bill of complaint. As a result of the amendment, Joseph, Andrew and Barbara were joined as parties plaintiff.

The chancellor found that, "it was the intention of the decedent that the monies in the financial institutions should be collected by his younger brother [Anthony] and divided equally between himself and his two brothers and sister . . . ." The judge went on to rule that two bank accounts, one in the Savings Bank of Baltimore and the other a checking account in the Union Trust Company were "trust accounts" and thus the property of Anthony and Adeline. That ruling was grounded on *Milholland v. Whalen,* 89 Md. 212, 43 A. 43 (1899).

The remaining three accounts, the chancellor said, belonged to the appellees. He referred the matter to an auditor.[1] Anthony and his wife have appealed. Joseph, Andrew, Barbara and Ms. Ritchey, as personal representative, have cross-appealed.

## *The Issues*

The parties in their respective appeals posit a total of six questions. Anthony and Adeline ask:

"I. Was it error to allow a third bill of complaint to be filed adding an entirely new class of plaintiffs after the case had been held *sub curia.*

II. Did the chancellor err in receiving inadmissible evidence to prove a trust.

III. Was the evidence sufficient to prove a trust by clear and convincing evidence.

IV. Was the Union Trust account a trust account and/or did it pass to appellant by operation of law.

V. Did the agreement signed with Security Savings and Loan create a joint tenancy in the

---

1. Md. Cts. & Jud. Proc. Code Ann. § 12-303 provides that a party may appeal from an order "[d]etermining a question of right between the parties and directing an account to be stated on the principle of such determination."

The trial judge's order determines the rights of the parties to the disputed bank accounts while also requiring an accounting. This appeal is within our jurisdiction.

funds and/or prevent the personal representative from claiming same for the estate and/or with all other evidence obviously show that a trust was intended though words 'in trust' were not used."

Joseph, Andrew, Barbara and the personal representative raise one issue:

VI. "In view of the court's findings as to the intentions of the decedent, did the Chancellor err as a matter of law in failing to impose a constructive trust on the proceeds of the Union Trust checking account and the Savings Bank of Baltimore savings account?"

The appellees have moved to dismiss the appellants' appeal pursuant to Md. Rule 1036 on the ground that appellants' brief violates Md. Rule 1031 as to "Style and Contents of Brief." Although we agree that the brief does not conform strictly to the Rules, we nevertheless exercise our discretion and deny the motion because we do not view the violations as substantial.

In light of the overlapping nature of the issues raised, we have opted to consider several of them together, and we have divided our opinion into four sections. We shall, in discussing each section, add such additional facts as may be necessary.

## The Third Amended Bill of Complaint

Appellants argue that the chancellor erred in allowing the filing of a third amended bill of complaint at a point in time following the trial and while the matter was being held *sub curia.*

The original plaintiff, as we have seen, was Judith P. Ritchey, in her capacity as court appointed personal representative of decedent's estate. *See* Md. Rule 203 b. (1). Apparently, because of the evidence that unfolded at trial, Joseph, Andrew and Barbara sought to become parties plaintiff. By a third amended bill of complaint, their names

were added as complainants over appellants' strong objection.

Anthony contends that the decedent's personal representative was not a proper party to bring an action to enforce a trust for the benefit of the surviving brothers and sister who may have a claim as beneficiaries of a trust. Anthony cites as authority for his position *Illian v. Northwestern National Insurance Co.,* 215 Md. 507, 138 A.2d 884 (1958). That case, however, is factually inapposite. There the Court of Appeals dealt with an insurance policy purchased by a partnership. The Court said that a personal representative of a deceased partner could not maintain or join an action to enforce the insurance contract because the deceased partner's interest in a partnership contract devolves on the surviving partners, not the personal representative. 215 Md. at 513. *See,* 1 Poe, *Pleadings and Practice,* (Sixth ed.), § 352; *Restatement, Contracts,* § 132; 4 Corbin, *Contracts,* § 939 at 783-784.

What the appellants in this case overlook is that the personal representative asserted a claim to the funds on behalf of the estate, in addition to her request for a constructive trust. Certainly, the personal representative had not only a right, but a duty, to pursue what she believed to be assets of the estate she was charged with administering.

Md. Rule 320 b. permits an amendment to be made so as to bring into the case any heir who might have been omitted, and the court, in a non-jury case, may allow amendment "at any time before a final judgment or decree is entered." Md. Rule 320 c. 1.

Maryland has repeatedly held that amendments are to be permitted freely in order to promote the ends of justice. *Staub v. Staub,* 31 Md. App. 478, 356 A.2d 609 (1976). The granting or denial of an amendment is within the discretion of the trial court. *Sanford v. Sanford,* 15 Md. App. 390, 290 A.2d 812 (1972). No appeal will lie from the trial court's ruling in the absence of a clear showing of an abuse of discretion. *Wright v. Trotta,* 34 Md. App. 309, 367 A.2d 557 (1976). "Additional parties plaintiff may be added . . . subject only to

the limitation contained in Rule 320 b ... [1.] that 'some one of the original plaintiffs and some one of the original defendants must remain as parties to the action.'" *Crowe v. Houseworth,* 272 Md. 481, 485, 325 A.2d 592 (1974).

Appellants argue that they were unfairly prejudiced by the amendment because, had the heirs been party plaintiffs at the trial, appellants would not have been prevented by the Dead Man's Statute, Courts Art. §9-116, from testifying as to their conversations with the decedent.

We think appellants misread the statute. Courts Art. §9-116 provides, in pertinent part:

> *"A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such,* in which a judgment or decree may be rendered for or against them ... may not testify concerning any transaction with or statement made by the dead or incompetent person, ... unless called to testify by the opposite party ...." (Emphasis added.)

Quite obviously, the statute embraces actions "by or against" heirs, devisees, distributees or legatees. Appellants fall clearly within the class of persons against whom the Dead Man's Statute is directed. Had Joseph, Andrew and Barbara, as heirs, brought the action in the first instance against Anthony and Adeline, as heirs, the statute would have applied with the same force and effect as was applied in the trial of this cause.

Fairness to appellants compels us to note that in *Snyder v. Crabbs,* 263 Md. 28, 30, 282 A.2d 6 (1971), the Court said that the Dead Man's Statute "is applied only to proceedings brought by or against an executor or administrator as such. Beyond this narrow area it has no application." Taken out of context the quoted statement would seem to rewrite the statute and limit its application to contests by or against personal representatives only. The statement by the Court is overly restrictive, but a careful reading of the opinion and the cases cited as authority leads to the conclusion that the

Court was actually holding in the case that the rule prohibits testimony by parties, not by third parties. Apparently in typing or printing the opinion, some of the wording of the statute was inadvertently omitted.

The Dead Man's Statute applied in the instant case to testimony of appellants and appellees alike. The chancellor did not err in barring any testimony from them personally as to transactions with or statements by or to their deceased brother.

### Hearsay Evidence

Appellants complain that the chancellor erred in admitting hearsay evidence to prove that the intention of the decedent was that upon his death all of his monies in financial institutions were to be collected and divided equally among his brothers and sister. The challenged testimony was that of three witnesses, who claimed to have held private conversations with Charles subsequent to the time he added Anthony's name to the bank accounts.[2]

The gist of each of the conversations was that Charles had selected his youngest brother, Anthony, to handle business affairs in the event that Charles became ill, and upon Charles's death, to pay his last debts and then divide any remaining funds equally among the siblings.

Undoubtedly, that evidence was offered to prove the truth of an out of court statement. Therefore, the issue before us is not whether the contested testimony was hearsay but whether it is admissible as an exception to the Hearsay Rule.

The Court of Appeals in *Mason v. Poulson,* 40 Md. 355 (1874), held that statements made by a decedent as to his

---

2. The three witnesses were the husband, son, and daughter-in-law of Barbara Mandish, the sister of Charles. Accordingly, their testimony is *not* inadmissible under the Maryland Dead Man's Statute. Md. Cts. & Jud. Proc. Code Ann. § 9-116. As Judge Lowe pointed out for this Court in Trupp v. Wolff, 24 Md. App. 588, 602, 335 A.2d 171 (1975), "[t]he persons excluded from testifying [by the Dead Man's Statute] are not those with an interest of any sort, but rather traditional real parties in interest and their representatives."

testamentary interest were admissible if offered through those persons who heard them. Courts in other States have generally arrived at the same conclusion as the *Mason* Court. For example, in *Griffin v. Robertson,* 592 S.W.2d 31, 33 (Tex.Civ.App. 1979), Chief Justice William Cornelius of the Court of Civil Appeals of Texas, said:

> "Although there is some difference of opinion, the majority rule in the United States . . . is that parol evidence is admissible to show the true intention of a depositor in setting up a joint survivorship account, even though such evidence contradicts the express terms of the joint account agreement."

California follows the same rule. Justice Traynor penned for the court in *Whitlow v. Durst,* 20 Cal. 2d, 523, 127 P.2d 530-531 (1942):

> "When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving.
>
> . . . .
>
> Likewise, in gift cases declarations made by the grantor before, contemporaneously, and subsequent to the alleged gift are admissible though the statements be self-serving."

A person's state of mind, feelings or emotions can only be manifested to others by words, oral or written, gestures, countenance, attitude and mannerisms. While the person is alive, his own memory of what his state of mind was at a particular time is more likely to be true than that of a bystander. Yet, when the person has died, there can be no other way of proving his or her intent except by testimony of others as to the decedent's state of mind as evidenced by words, gestures, mannerisms and the like. *Mutual Life*

*Insurance Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892). Numerous other authorities adopt the same position.[3]

We think that the testimony of the three witnesses as to the content of Charles's conversations with them relative to his intent to have Anthony marshal the assets of the estate, pay the outstanding final debts, and then divide the net proceeds equally among the four siblings was admissible under the state of mind, or true intention exception to the Hearsay Rule. Thus, we hold that the chancellor did not err in permitting such testimony.

---

**3.** Testimony of non-party as to declaration of decedent may be admissible under certain circumstances to prove state of mind at a given time, although uttered before or after that time. *See,* Watenpaugh v. State Teacher's Retirement System, 51 Cal.2d 675, 336 P.2d 165 (1959) (and cases cited therein); Johnson v. Mueller, 346 Ill. App. 199, 104 N.E.2d 651 (1952) (surrounding facts and circumstances, and declarations of the depositor are admitted to determine existence of donative intent); Burns v. Paquin, 345 Mass. 329, 187 N.E.2d 139 (1963) (oral evidence permissible to prove joint bank account deposit was created only as a matter of convenience); Alger v. North End Savings Bank, 146 Mass. 418, 15 N.E. 916 (1888) (statements made by depositor after creation of account to the effect that a trust was intended are admissible and may be influential); Burns v. Plaza Bank, 141 S.W.2d 209 (Mo. App. 1940) (no error in permitting testimony of third persons as to conversations with deceased as to her purpose in opening a joint account); Re Hickmott, 166 Misc. 536, 4 N.Y.S.2d 457 (1938), *aff'd* 256 App.Div. 1047, 10 N.Y.S.2d 918 (evidence as to conversation with the deceased depositor was admitted); Havens v. Havens, 126 Misc. 155, 213 N.Y.S. 230 (1925), *aff'd without opinion* 215 App. Div. 756, 213 N.Y.S. 818 (intention of deceased depositor was evidenced by declarations made by her while on a trip); Re Meehan, 59 App. Div. 156, 69 N.Y.S. 9 (1901) (evidence of depositor's declaration showed the depositor's intent); Mabie v. Bailey, 95 N.Y. 206 (1884) (statements of depositor made after creation of account admissible to show intent); Green v. Comer, 193 Okla. 133, 141 P.2d 258 (1943) (court weighed testimony of two witnesses as to statements made by depositor during her lifetime); Glessner v. Security-Peoples Trust Co., 156 Pa.Super. 56, 39 A.2d 165 (1944) (testimony which throws light upon intention of the parties is admissible as regards a deposit agreement creating a joint tenancy with right of survivorship); 6 Wigmore, *Evidence,* § 1725 (Chadbourn rev. 1976).

There is authority, however, denying the right to admit parol evidence to determine the ownership of a joint deposit. See cases to that effect at 33 A.L.R.2d 569, 578-581.

## The Trust Accounts

The trial judge found as a fact that the "intention of the decedent was that the monies in the financial institutions were to be collected after his death and divided in kind between his surviving brothers and sister." Having so found, the chancellor went on to hold that under *Milholland v. Whalen, supra,* the "trust accounts" vested in Anthony and were not subject to the impression of a constructive trust thereon. We have a different view.

The "special" checking account at the Union Trust Company and the savings account at the Savings Bank of Baltimore contained the legend:

> "Charles F. Ebert in trust for self and Anthony F. Ebert joint owners, subject to the order of either, the balance at death of either to belong to the survivor."

*Milholland v. Whalen, supra,* declared as a general rule that ownership of bank accounts containing the above quoted language creates a rebuttable presumption that a trust has been impressed upon the funds on deposit to the credit of that account. "The entry, unexplained, is a sufficient declaration of trust, because it indicates an intention to establish a trust, *but this may be rebutted.*" 89 Md. at 216. (Emphasis supplied.)

For purposes of the case now before us, the significant language of *Milholland* are the words "but this may be rebutted." Those words were given more meaning in *Shirk v. Suburban Trust Co.,* 248 Md. 114, 119, 235 A.2d 549 (1967), where the Court reiterated what it had said in *Shook v. Shook,* 213 Md. 603, 607, 132 A.2d 460, 462 (1957), namely:

> " '[T]he entry may be explained and the intention indicated may be rebutted. It is always open to the executor or administrator [of the estate] of the decedent or the parties in interest to show that the purpose of the declaration of trust was not what it, in form, appeared to be. The rebuttable presump-

tion is that created by the execution of the transfer, and the burden of proof is on those seeking to rebut such presumption.' "

Judge Horney, writing for the Court in *Shirk,* went on to explain that under certain facts and circumstances, the "entry on the bank book" may constitute a "special trust" which terminates upon the death of the original owner of the bank account.

The entry in the savings account at the Savings Bank of Baltimore, and in the "special" checking account at the Union Trust Company were, we think, intended to create "special trusts" to pay Charles's expenses in the event Charles became incapacitated. The evidence demonstrates that upon Charles's death, Anthony's task was to collect the assets of the estate, pay the bills of the decedent and distribute equally among his brothers and sister the balance of Charles's estate. If credence is given to that testimony, it becomes apparent that a "special trust" was created and that it terminated upon the death of Charles. The accounts are, therefore, governed by the exception set out in *Milholland v. Whalen, supra,* and explicated by *Shook.*[4] They did not pass by operation of law to Anthony. The trial judge erred in his application of *Milholland,* especially after he found that Charles' intent was to the contrary. Accordingly, we shall reverse that part of the decree.

### The Non-Trust Account

It is clear that of the three remaining accounts, at least two of them, a passbook savings and a certificate of deposit, both at Security Savings and Loan Association, are "jointly held." Appellants maintain that the third account, a "Multiple Maturity Time Deposit Account" (MMTDA) with Union Trust Company, was a "trust account" within the meaning of *Milholland v. Whalen, supra.* The chancellor apparently took the position that the MMTDA account was

---

4. *See also,* Hancock v. Savings Bank of Baltimore, 199 Md. 163, 85 A.2d 770 (1952); Bollack v. Bollack, 169 Md. 407, 182 A. 317 (1935).

not a "trust account." Irrespective of how it is viewed, the ultimate outcome will remain unaffected. If the MMTDA is seen as a "trust account," its disposition is governed by "the Trust Account" section of this opinion. If it is not a "trust account," it is properly included in this section.

Anthony claims that he is entitled to the funds in the two Security Savings and Loan accounts inasmuch as he and decedent were joint tenants with the inherent right of survivorship of the funds in those accounts. To buttress his stand, Anthony points to an agreement that he and Charles signed as part of the paper work involved in opening the accounts. The agreement provides, *inter alia,* that "it shall be conclusively presumed that it was the intention of said parties to create a joint tenancy . . . ."

There are, we think, two answers to appellants' contention. The first is found in *Whalen v. Milholland,* 89 Md. 199, 43 A. 45 (1899). There it is said:

> "Where . . . it appears that the original owner purposely deposited the fund to his and another's credit as joint owners, retaining the pass-book so as to continue his dominion over the money; a distinct, unequivocal delivery of the book to the other person named as co-owner, with the intention to part with the ownership and to make an irrevocable gift of the fund and an acceptance of it by the donee, would pass the whole interest therein to the donee, because there would then be no inconsistency between the legal effect of the entry on the book, and the right in which the donee of the book could claim the deposit, and there would no longer be a *locus penitentiae* in the original owner." 89 Md. at 206.

The evidence in the instant case is that the passbook and certificate were in Charles's possession until his death. A few days afterwards, Anthony removed them from decedent's home. Consequently, there was no *inter vivos* delivery of the alleged gift during Charles's lifetime. The chancellor properly held that there was no completed gift, and the

money passes to Charles's estate. The heirs, as brothers and sister of the decedent, inherit equally.

The second answer is that ownership of the funds did pass to Anthony under the survivorship language of the accounts, but that a constructive trust for the benefit of all four of Charles's siblings is impressed upon the funds in Anthony's hands.

In *Potts v. Emerick,* 293 Md. 495, 445 A.2d 695 (1982), Mrs. Timbrook placed the name of her married sister, Mrs. Potts, on several bank accounts. They assumed the accounts to have been in a form sufficient to pass sole ownership of the funds to Potts on Timbrook's death. Subsequently, in an unattested paper writing, and then later on by a Last Will and Testament, Mrs. Timbrook made clear her intent to have her sister use the funds in the joint bank accounts to pay various expenses and to fund the monetary and residuary bequests set forth in the Timbrook Will. Potts agreed to do so. After Timbrook's death, Potts refused to fund the bequests fully, maintaining that the monies in the joint accounts passed by survivorship to her absolutely in accordance with both the terms of the account and Timbrook's intent at the time the accounts were created. Potts asserted that any attempt to impose a further trust on her beneficial interests failed because Timbrook's power to alter their arrangement was limited to *inter vivos* withdrawal of the funds which did not occur. Neither the circuit court nor the Court of Appeals shared Potts's point of view.

The Court of Appeals determined that where the settlor's intention was that funds in the joint accounts be used in a particular way, the act of the beneficiary in revoking the promise after the death of the settlor warranted imposition of a constructive trust on the funds in the hands of the beneficiary for the benefit of the settlor's estate on the theory of unjust enrichment. 293 Md. at 501.

Anthony avers that the distinction between *Potts v. Emerick* and the case at hand is that in *Potts* there was testimony that Potts assented to the decedent's expression of intent, but in the case at bar, there was no evidence that

Anthony assented to Charles's wish. We do not perceive that distinction.

We believe the chancellor thought that Anthony knew of Charles's intent as that intent was recounted by witnesses. Thus, the trial judge may well have inferred that Anthony did "assent" to Charles's wish that he, Anthony, act as the representative of Charles, gather the assets and disburse them in accordance with Charles's intent, the form of the accounts notwithstanding.

> *Decree affirmed in part and reversed in part.*
> *Case remanded for the entry of a decree in accordance with this opinion.*
> *Costs to be paid by appellants.*