ARTHUR V. MILHOLLAND, Executor, &c., vs.
MARY WHALEN.

*Voluntary Trusts of Personal Property—Deposit in Savings Bank in Trust for Depositor and Another and the Survivor.*

A valid trust of personal property may be created by parol declaration that the declarant holds the property as trustee for another, and such trust may be enforced in favor of a volunteer.

A party may constitute himself trustee of property for the benefit of himself and another person.

When all the purposes of a trust of personalty have ceased, the absolute estate is in the person entitled to the last use.

A woman deposited money in a Savings Bank in her name "in trust for herself and M., joint owners, subject to the order of either ; the balance at the death of either to belong to the survivor." This entry was made in pursuance of her directions and carried out her intention. The depositor retained the pass-book and afterwards drew out part of the money. Upon her death the balance was claimed by her executor and by M. *Held*, that the entry so made constituted a complete and irrevocable trust ; that it was immaterial whether the fact of the deposit was communicated to the beneficiary or not, and that M. is entitled to the money so deposited.

Appeal from a decree of the Circuit Court of Baltimore City (Wickes, J.)

The cause was argued before McSherry, C. J. Fowler, Briscoe, Page, Roberts, Pearce and Schmucker, JJ.

*James McColgan* and *Charles W. Milholland* for the appellant.

*Francis T. Homer* (with whom was *George R. Willis* on the brief), for the appellee.

McSherry, C. J., delivered the opinion of the Court.

This is another Savings Bank deposit case, but it is unlike any of the numerous ones that have preceded it. The facts are few and simple. Elizabeth O'Neill, on the 24th day of

April, eighteen hundred and ninety-five, opened an account in the Metropolitan Savings Bank.    In the pass-book which she then received, the following entry appears : " Metropolitan Savings Bank, in account with Miss Elizabeth O'Neill.    In trust for herself and Mrs. Mary Whalen, widow, joint owners, subject to the order of either ; the balance at the death of either to belong to the survivor."    This entry was made at the instance and upon the request of Miss O'Neill ; and the teller of the bank testified that " the entry as it appears in this book carried out    *    *    *    and embodies the instructions given    *    *    *    at the time the account was opened. "    There is a by-law of the bank which provides that " every deposit made by one person for the benefit of another person shall be expressed to be ' *in trust,*' and no deposit shall be received, or be expressed to be received, from one person ' *by* ' another person, or by one person ' *for* ' another person."    The bank-book was retained by Miss O'Neill.    The aggregate of the deposits foots up two thousand three hundred and twenty-three dollars and forty cents.    There was drawn out by Miss O'Neill in varying amounts, during her life, the sum of five hundred and twenty dollars ; and, after the death of Miss O'Neill, Mrs. Whalen withdrew one hundred and twenty-five dollars. There are two claimants of the balance now on deposit, viz., Mrs. Whalen and Miss O'Neill's executor.    Upon a bill filed by the bank they have been required to interplead.    On this state of facts the law is well settled.

" Where a person intends to give property to another, and vests that property in trustees, and declares a trust upon it in favor of the object of his bounty, by such acts, the gift is perfected, and the author of the trust loses all dominion over it ; and in such gifts of mere personal estate, the declaration of trust may be made and proved by parol, without the aid of writing.    And the cases go the length of maintaining that where the author of the gift retains the legal dominion over the subject of the gift in himself, but fully and completely declares himself to be trustee of the property

for the purposes indicated, there he will be treated as trustee, and the object of his bounty will be given the benefit of the trust. In all such cases the declaration of trust is considered in a Court of Equity as equivalent to an actual transfer of the legal interest in a Court of Law ; and, if the transaction by which the trust is created be complete, it will not be treated as invalid for want of consideration." *Taylor* v. *Henry & Bruscup*, 48 Md. 559 ; *Kilpin* v. *Kilpin*, 1 M. & K. 520 ; *McFadden* v. *Jenkyns*, 1 Phill. 153 ; Cox v. *Sprigg*, 6 Md. 274 ; *Smith & Barber* v. *Darby*, 39 Md. 268. In *Jones* v. *Lock*, L. R., 1 Ch. 25, LORD CRANWORTH observed : " If a man chooses to give away anything which passes by delivery, he may do so, and there is no doubt that, in the absence of fraud, a parol declaration of trust may be perfectly good, even though it be voluntary. If I give any chattel, that of course passes by delivery ; and if I expressly or impliedly say I constitute myself trustee of such and such personal property for a person, that is a trust executed, and this Court will enforce it, in the absence of fraud, even in favor of a volunteer. * * *. The authorities all turn upon the question whether what took place was a declaration of trust or merely an imperfect attempt to make a legal transfer of the property. In the latter case the Court will afford no assistance to volunteers ; but when the Court considers that there has been a declaration of trust, it is a trust executed, and the Court will enforce it whether with or without consideration."

There are many cases to be found in the reports where these familiar principles have been applied to deposits in Savings Banks. We will allude to some of them, not because they make the principles any more obvious, but because they furnish illustrations of the application of those principles to just such contentions as this litigation presents.

It will be observed that the bank is not, by the terms of the deposit, made the *trustee*, and we have, therefore, no question confronting us as to the power of a corporation to act in that capacity. The contract between Miss O'Neill

and the bank is evidenced by the words of the entry and as understood by her according to the testimony in the record, constituted Miss O'Neill the trustee ; and if effective at all, operated to divest the title to the money out of her individually, and to vest it in her as trustee for the purposes expressed. According to all the cases, if she intended to accomplish this result, it was perfectly competent to her to do it, and to do in that way ; and when done it constituted a complete change in the ownership of the money. Her intention to do precisely what was done is not left in doubt; for the testimony of the bank's teller is clear and emphatic that the entry represents exactly and literally what Miss O'Neill desired to consummate. Such a declaration of trust differs widely from a gift *inter vivos* and from a *donatio mortis causa.* These, to be effective at all, require a delivery of the thing itself, and must pass the whole title, so that the donor can have no further dominion or control over it ; but a gift in trust withholds the legal title from the donee. The legal title may be transmitted to a third person, or it may be retained by the donor, but in either case the equitable title has gone from him, and unless the declaration of trust contains a power of revocation it leaves him powerless to extinguish the trust. *Bath Sav. Ins.* v. *Hathorn,* 88 Me. 122 ; *S. C.,* 32 L. R. A. 377.

In the application of the principles we have just stated, to deposits in Savings Banks there has been some divergence of views, but no dispute as to the principles themselves. There is one line of cases which holds, that to perfect the trust, knowledge of the deposit must be communicated to the beneficiary ; whilst the opposite line holds the deposit to be sufficient of itself, as a declaration of trust, to vest the beneficial interest in the *cestui que trust,* if that was the intention of the depositor. But it can, upon principle, make no possible difference whether the depositor communicates the fact of the deposit to the beneficiary or not (except in so far as the communication may be evidence of the intention with which the deposit was made) for the validity of the trust

does not depend on the assent of the *cestui que trust,* but wholly upon the intention of the depositor and an apt declaration of the trust. ·The distinction between these two lines of cases is not a difference of principle. The cases of the first group hold that notice of the fact of the deposit to the beneficiáry is necessary *evidence* of the creation of the trust, as contradistinguished from an act necessary to be done *to create* the trust ; whilst the other cases treat the entry itself, or any other competent evidence of the existence of the intention to establish a trust, as ꞌsufficient, even though the beneficiary to be in total ignorance of it. It is, at most, a difference as to the quality of the evidence needed to prove the trust, not a difference as to the method by which such a trust may be created. In Maryland it is not requisite that the *cestui que trust* should be notified of the declaration or establishment of the trust. *Smith & Barber* v. *Darby,* 39 Md. 278. It is the donor's act which originates the trust, and it is the intention with which he does the act that is material. The entry, unexplained, is a sufficient declaration of trust, because it indicates an intention to establish a trust ; but this may be rebutted. . Possession by the depositor of the bank-book in no way detracts ·from the force of the entry ; because it is a possession by the trustee and does not denote that no beneficial interest had been given to the *cestui que trust. Minor* v. *Rogers,* 40 Conn. 512. If the delivery of the money to a bank to be placed to the credit of the depositor in trust for another, and the declaration of the trust, as evidenced by the entry made pursuant to the settlor's instructions, constitute and evidence a valid trust, then no act of the depositor in subsequently withdrawing ꞌthe money can affect the rights of the *cestui que trust,* unless the power to withdraw be reserved.

In *Martin* v. *Funk,* 75 N. Y. 134, the account as opened was : " The Citizens' Savings Bank in account with Susan Boone, in trust for Tillie Willard." The account was opened in eighteen hundred and sixty-six and the depositor retained possession of the bank-book until her death in

eighteen hundred and seventy-five.   The beneficiary was not informed of the existence of the account.   It was held that such a transaction, unexplained, and followed by the death of the depositor with the account still open, created a valid trust.   And so in *Willis* v. *Smyth*, 91 N. Y. 297. In *Sayer* v. *Assignees of Moses Bros.*, 15 L. R. A. 545, it was held that a trust is complete and irrevocable where a person makes a deposit of money in bank to the credit of himself as trustee for certain children named, and that nothing remained to him but a mere naked legal title. *In re Gaffney's Estate*, 146 Pa. St. 49, the facts were that Hugh Gaffney deposited five hundred and sixty dollars in the Johnstown Savings Bank in his name, in trust for Polly McKim; and the Supreme Court of Pennsylvania said :   " We have, then, the case of a deposit on the books of the bank of a sum of money in the name of Hugh Gaffney, trustee for Polly McKim.   This makes out at least a *prima facie* case for the appellant.   Upon the face of the bank-book the money belonged to Polly McKim and there is not sufficient upon the record to rebut this presumption."   In *Gerrish* v. *New Bedford Sav. Ins.*, 128 Mass. 159, the facts were as follows :   A, after depositing the maximum amount allowed by the bank, placed other sums in the name of himself as trustee for his son and his granddaughters.   He retained the pass-books and during his life collected the interest.   The son and granddaughters offered to prove that A. had said to them at various times " that he had put this money in the bank for them, but he wanted to draw the interest during his lifetime, and after he was gone they were to have the money."   It was held that the evidence was admissible, and that upon all the evidence a jury would be justified in finding that A. had fully constituted himself a trustee for the claimants.   See the very full notes to *Cunningham* v. *Davenport*, 32 L. R. A. 373 ; and 21 *Am. & Eng. Ency. L.* 735 ; 27 *Am. & Eng. Ency. L.* 61, *and the numerous cases in note* 2 ; 18 *Am. Law Rev.* 379.

Without multiplying illustrations, or overburdening this opinion with further references, those just given suffice to show that such a deposit as we are now dealing with, constitutes a valid declaration of trust, in the absence of contravening proof ; and that when a trust is thus created the rights of the beneficiary become fixed, even though the settlor retains the bank-book in his possession. Nor does the circumstance that the depositor makes himself a beneficiary jointly with another, prevent the trust from attaching to the fund. A trust is not rendered void by the appointment of a beneficiary as trustee. 1 *Perrv on Trusts*, sec. 297 ; *Woods* v. *Woods*, 1 M. & Cr. 401 ; *Crockett* v. *Crockett*, 1 Hare, 451; *S. C.*, 2 Phill. 553; *Hill on Trustees*, 65, note 1 ; *Story* v. *Palmer*, 46 N. J. Eq. 1 ; *Rogers* v. *Rogers*, 18 Hun. 409.

We have, then, a valid declaration of trust impressed upon the funds in bank, and the bank holding them, not as trustee, but *for* the trustee, with knowledge of the conditions of the trust. The trustee was seized of the money for the use of herself and her sister, as joint owners of the equitable interest ; and both were authorized to draw the funds upon producing the bank-book. This is not all. The declaration of trust transferred to the trustee the legal title for the benefit of the survivor of the two *cestuis que trustent*, as to the *balance* of the fund remaining in bank at the death of either. By the terms of the declaration of trust, upon the death of Miss O'Neill, the balance on deposit became Mrs. Whalen's property, not by a gift and delivery of the bank-book, nor by the right of survivorship as one of two joint owners, nor by a gift of the funds *inter vivos ;* but purely and exclusively because the trust, as declared in eighteen hundred and ninety-five, stripped Miss O'Neill of her individual ownership of the money, and vested the money in her in trust, as to this balance, for Mrs. Whalen, if the latter happened to outlive Miss O'Neill. The *Statute of Uses*, 27 Henry, VIII. ch. 10, has no application to this case, and the title to the funds is unaffected by the opera-

tion of that enactment. "When a trust has been created in personalty, and all the purposes of the trust have ceased, or are at an end, the absolute estate is in the person entitled to the last use." *Denton* v. *Denton*, 17 Md. 407.

What obligations or liabilities, if any, the bank, as custodian of the fund, assumed by accepting the deposit upon the trusts declared ; or how far it would be accountable to the *cestui que trust* if it knowingly participated in a dissipation or waste of the trust funds, or an appropriation of them to a purpose foreign to the trust, are questions not now before us, and a discussion of them is not required in disposing of the conflicting claims of the parties to this controversy.

Miss O'Neill had the power to fasten a trust on her own property for the benefit of herself and another, where the rights of creditors were not interfered with; and she could lawfully do this and retain in her own possession the evidence of her having done it. *Carson* v. *Phelps*, 40 Md. 73. That she knowingly, and with a full appreciation of what she was about, did create and declare this trust, is confessedly clear ; and there is no rule of law which forbids its enforcement when thus satisfactorily established, and when no superior claims of creditors are invaded.

Our conclusion, founded on well-recognized legal principles and on carefully considered judicial precedents, is, that Mary Whalen, as *cestui que trust* is entitled to the fund on deposit in the Metropolitan Savings Bank ; and, as the decree appealed from awarded that fund to her, it will be affirmed.

> *Decree affirmed with costs in this Court and in the Court below to be paid by the executor of Miss O'Neill out of her estate.*

(Decided March 16th, 1899).