## SHIRK *v.* SUBURBAN TRUST COMPANY

[No. 685, September Term, 1966.]

*Decided December 4, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, McWILLIAMS, FINAN and SINGLEY, JJ.

*Robert S. Hoyert,* with whom were *Bill L. Yoho, Roy W. Hooten* and *Joseph F. McBride* on the brief, for appellant.

*John C. Joyce,* with whom were *Duckett, Orem, Christie & Beckett, Robert C. Christie* and *James P. Salmon* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

Although unique in that it is an action at law rather than in equity, this case is another in a long line of cases concerning the rights of the surviving owner in and to joint bank accounts.

Two accounts are involved in this controversy. One, a checking account, was opened in 1943. The other, a savings account, was begun in 1951. Both accounts, in the College Park branch of the Suburban Trust Company, remained in the name of Mary M. Power until 1965. Prior to going to a hospital in September of that year for an emergency operation, the owner, who had always been apprehensive about her financial affairs and consistently paid her bills promptly, notified the bank that she wanted to add the name of a niece to the accounts and, while she was in the hospital, this was accomplished by a notation changing the single ownership of both accounts to a joint ownership reading—

> "Mrs. Mary Mowall Power in trust for self and Marjorie R. Shirk, joint owners, subject to the order of either, the balance at death of either to belong to the survivor."

During the time her aunt was hospitalized, the niece transferred $1000 from the savings to the checking account and paid several household bills as well as hospital, medical and nursing bills. When the aunt was released from the hospital, she led an active life until her death at the hospital in April of 1966. After her death, the niece properly reimbursed herself for the last hospital admittance charge she had prepaid out of her own funds and paid the last nursing charge out of the joint checking account. Accounting as of the date of death of the aunt there was $36,704 in the savings account and the checking account contained $2290.25. Two days after the funeral, the niece attempted to withdraw $2250 from the joint checking account by depositing a check for that amount in a building and loan association, but the bank refused to honor it. Later, the niece also attempted to withdraw $30,000 from the joint savings account.

Shortly thereafter the surviving owner filed separate declarations against the trust company alleging the existence of the joint accounts in the names of the original owner and herself, the decease of the co-owner and the claim of the plaintiff to the funds on deposit in each account. At the same time, the plaintiff filed motions for summary judgment and affidavits in support thereof. In turn, the defendant bank, as the depository and custodian of the funds and as the named executor of the estate of the co-owner, filed the customary general issue pleas of "never indebted" and "never promised" and special pleas [1] stating the reasons why it was not indebted to the plaintiff along with its answers in opposition to the motions (for summary judgment) and affidavits in support of its answers. In essence, the special pleas alleged that the joint accounts rightfully belonged to the estate of the deceased owner; that the accounts were changed from a single to a joint ownership solely for the purpose of having the plaintiff pay the household bills and medical expenses of the decedent during periods of her illnesses and hospitalizations; that the decedent did not intend to make a gift of the funds to the plaintiff; that the defendant was obliged to

---

1. The special pleas, although not begun with the formal words "for plea on equitable grounds" or words to that effect, as is required by Maryland Rule 342 d 1(b), appear to be equitable defenses.

protect the funds and preserve the assets of the estate; and that the trust company was not a mere stakeholder. When the lower court, as a consequence of the summary judgment pleadings having raised a disputed question of fact as to whether the defendant bank was indebted to the plaintiff, denied the motions for summary judgment and permitted the trust company, as executor of the estate of the decedent, to intervene in the lawsuits filed against it, the plaintiff prayed a jury trial.

The evidence with respect to the intention of the decedent is clear. A sister-in-law testified without objection that Mary Power had set up the joint accounts because she was going blind and wanted Marjorie Shirk "to pay her bills for her." Then, a teller at the bank (Helen Gillions) testified that the plaintiff told her, when she came for the necessary signature cards to bring about a change of ownership, that the aunt wanted her name on the accounts so that she could pay the bills when her aunt was sick. The manager of the bank (William Reading) also testified that the plaintiff told him that her aunt had put her name on the accounts so that she could pay the bills in an emergency. A trust officer and the manager of the trust department (Thomas Lawson) testified that the plaintiff had said to him, in reply to his questions, that the joint accounts had been set up as a convenience for the payment of bills in the event her aunt was unable to take care of her own financial affairs and that it was her intention to turn over the balance in the accounts to the executor to be distributed in accordance with the will of her aunt.

There was no evidence that the decedent intended the change of ownership as a gift. The niece never deposited any of her own money in the joint accounts and wrote checks on them only for the benefit of her aunt. The plaintiff did not testify on direct examination—the brief states she was prohibited from doing so under the provisions of § 3 of Article 35 of the Code—as to the transaction she had with the decedent. But, on being recalled as a rebuttal witness, she categorically denied on cross-examination that the trust officer had asked her whether the bank accounts had been established as a matter of convenience. Instead she said that she did not realize she had a right to withdraw the money until the trust officer told her so; that she

did not tell him she would turn the funds over to the executor; and that the nearest she came to saying so was when she told him that she had no intention of stealing the money and would, if she "felt it was necessary," turn it over to the estate when the time came for settlement. On direct cross-examination she had previously testified that, on advice of counsel, she had attempted to withdraw such portions from each account as she thought was reasonable.

When the taking of evidence was concluded, the motions of both parties for directed verdicts were denied, the jury returned a verdict for the defendant, the motion of the plaintiff for judgment *n.o.v.* was denied and this appeal followed.

On appeal it is contended that the lower court should have granted summary judgment against the depository; that the executor should not have been permitted to intervene; that the information the plaintiff imparted to the bank officials with respect to the intent of the decedent was inadmissible as evidence; and, consequently, that the evidence was insufficient for the jury to make a determination as to the intent of the original owner.

While a question as to whether the surviving owner is entitled to the funds in a joint bank account is ordinarily raised by an action in equity, and in some instances by a bill of interpleader, we see no reason why the question of fact as to the intention cannot be determined in an action at law. The same rules of law would be as applicable to a case at law as to one in equity.

The general rule is that the creation of a joint bank account in the form used here is a sufficient declaration of trust provided the presumption arising therefrom is neither rebutted nor explained. *Blair v. Haas,* 215 Md. 105, 137 A. 2d 145 (1957); *Tribull v. Tribull,* 208 Md. 490, 119 A. 2d 399 (1956); *Whittington v. Whittington,* 205 Md. 1, 106 A. 2d 72 (1954); *Milholland v. Whalen,* 89 Md. 212, 43 Atl. 43 (1899). See also *Jones v. Hamilton,* 211 Md. 371, 127 A. 2d 519 (1956); *Bierau v. Bohemian Building, Loan and Savings Asso.,* 205 Md. 456, 109 A. 2d 120 (1954); *Hancock v. Savings Bank of Baltimore,* 199 Md. 163, 85 A. 2d 770 (1952). But, as stated in *Shook v. Shook,* 213 Md. 603, 607, 132 A. 2d 460, 462 (1957)—

"[t]he entry may be explained and the intention indicated may be rebutted. It is always open to the executor or administrator [of the estate] of the decedent or the parties in interest to show that the purpose of the declaration of trust was not what it, in form, appeared to be. The rebuttable presumption is that created by the execution of the transfer, and the burden of proof is on those seeking to rebut such presumption."

To the same effect, see *Coburn v. Shilling,* 138 Md. 177, 113 Atl. 761 (1921); *Ragan v. Kelly,* 180 Md. 324, 24 A. 2d 289 (1942); *Kuhl v. Reese,* 220 Md. 459, 154 A. 2d 712 (1959). And see *Owings v. Owings,* 233 Md. 357, 196 A. 2d 908 (1964). In the *Ragan* case, where the facts were quite similar to those in the case at bar, we had occasion to say (at p. 334) that "[f]rom all the facts and circumstances, as they appear from the evidence * * *, the conclusion is unescapable that the legal effect of the entry on the bank book * * * was intended to, and did, create a special trust for a definite and specific purpose, and the trust came to an end upon the death of the * * * [original owner]."

Under the instructions of the lower court, to which there were no exceptions, the jury verdict for the defendant had the effect of a finding that the joint accounts were created as a makeshift to enable the niece to pay the bills and expenses of the aunt in the event she became unable to attend to her own affairs. There was, as the record shows, ample evidence—much of which comprised the statements made by the appellant to the bank officials—to support the finding of the jury. *Hancock v. Savings Bank of Baltimore, supra* (199 Md. 163), is readily distinguishable from the case at bar in that there was in that case no testimony that the transfer was made for the sole purpose of paying bills as was the situation here.

In this case where the acts of the plaintiff, in filing a motion for summary judgment and affidavits in support thereof, opened the way for the defendant to answer the motion and file affidavits in opposition to it which raised a genuine dispute as to a material fact, the claim that summary judgment should

have been granted against the depository and that the executor should not have been permitted to intervene, overlooks the fact that, even if the trust company as executor had not been permitted to intervene, the bank as a depository (since it had information to the effect that the surviving owner had been only the bill-paying agent of the deceased original owner) had a right to protect itself from liability for, as well as an obligation to prevent, an unlawful withdrawal of the funds of a depositor. The further claim that the information imparted by the plaintiff to the bank officials was inadmissible by virtue of the "dead-man's" statute and the consequent deduction that the evidence was therefore insufficient to support the verdict of the jury was likewise without merit not only because the witnesses were competent to testify but because the bank was not a party to the transaction between the plaintiff and the decedent.

*Judgment affirmed; appellant to pay the costs.*