SCOTT, ADM'X OF THE ESTATE OF LILLIAN IRENE SMITH *v.* BOWMAN, ET AL.

[No. 185, September Term, 1968.]

*Decided April 2, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, SINGLEY, and SMITH, JJ.

*Robert J. Thieblot*, with whom was *Karl Goodman* on the brief, for appellant.

*Samuel M. Companaro* for Paul E. Bowman, one of appellees. No brief filed on behalf of other appellee.

MARBURY, J., delivered the opinion of the Court.

This is an appeal by the substituted complainant Dorothy B. Scott, Administratrix of the Estate of Lillian Irene Smith, also known as Lillian Bowman, from an order of the Circuit Court of Baltimore City which determined that certain funds on deposit with the Riverside Federal Savings and Loan Association (Riverside) in a savings account were the sole property of the appellee, Paul E. Bowman. Riverside was joined as a nominal party only, and claimed no interest in the funds other than as a stakeholder.

The appellant's decedent, Lillian Irene Smith, widow, and the appellee Bowman resided together without benefit of a marriage ceremony but held themselves out to the public as man and wife from November 1955 until December 1967. On November 14, 1955, the appellee and Mrs. Smith opened a savings account with Riverside in the form: Paul E. Bowman, in trust for himself and Lillian Bowman (wife) as joint owners, subject to the order of either, the balance at death of either to belong to the survivor. The account was an active one with both parties making deposits and withdrawals of substantial amounts.

In December 1967, Mrs. Smith became seriously ill, and she entered Maryland General Hospital under the name of Lillian Bowman. While in the hospital Mrs. Smith grew apprehensive concerning the payment of her bills and shortly after the first of January, 1968, she sent her daughter, Dorothy B. Scott, to her house to get the passbook for the account which was kept

in the kitchen in a metal can. The daughter was unable to obtain the passbook since the appellee had removed it. Thereafter, on January 24, 1968, Bowman withdrew $1,000.00 from the account. Some of this money was used to pay a portion of Mrs. Smith's hospital bills. Subsequently, when Bowman visited Mrs. Smith at the hospital she asked him for the passbook but he refused to give it to her. Mrs. Smith then instructed her daughter to arrange with Riverside for the freezing of the funds and also to withdraw them. Riverside suggested that a withdrawal slip be filled out. On January 30, 1968, such a slip was filled out by Mrs. Smith in the amount of $7,219.65. The record is devoid of any evidence that this withdrawal slip was ever presented to Riverside.

On February 3, 1968, Mrs. Smith filed suit in the Circuit Court of Baltimore City seeking an injunction against any further withdrawals by Bowman and a determination of the rights of the parties to the funds in the account. Before the case could be heard she died and her daughter, who had been appointed administratrix of her estate, was substituted for her as a party to the suit. After hearing testimony as to the sources of the money deposited in the account and the intention of the parties at the time said money was deposited, the chancellor found that the parties had created a valid trust and that the funds in the savings account were the sole and exclusive property of Paul E. Bowman. From an order embodying this adverse finding the administratrix has appealed.

As a preliminary matter the appellee invoked the "Dead Man's Statute," Code (1965 Repl. Vol.) Article 35, Section 3, as to much of the testimony of Dorothy B. Scott. The trial court admitted her testimony subject to exception but since no further effort was made by the appellee to exclude it and all of the testimony of the appellant was considered by the court, no prejudice resulted to her. We need not consider this point.

Since *Milholland v. Whalen,* 89 Md. 212, 43 A. 43 (1899), this Court has held that an account created by the words "A in trust for himself and B as joint owners, subject to the order of either, the balance at the death of either to belong to the survivor" establishes a presumptively valid, but rebuttable trust. *Mitchell v. Register of Wills,* 227 Md. 305, 176 A. 2d 763;

*Tribull v. Tribull*, 208 Md. 490, 119 A. 2d 399; *Whittington v. Whittington*, 205 Md. 1, 106 A. 2d 72. On appeal, the appellant does not dispute the lower court's findings of a valid trust, but argues that its termination was wrongfully prevented by the appellee's refusal to deliver the passbook to Mrs. Smith when requested of him.

There is no question but that both Bowman and Mrs. Smith had the power to terminate or revoke the savings account by withdrawing the funds. As stated in *Bierau v. Bohemian Bldg. Etc. Assn.*, 205 Md. 456, 462, 109 A. 2d 120, 124:

> "The creator of the trust may reserve the right to withdraw part or all of the deposit at any time, or from time to time. A withdrawal amounts, in legal contemplation, to no more than the exercise of the power of revocation which will not affect the validity of the trust. The right to withdraw may be given to the trustee-beneficiary and the other beneficiary separately, or jointly, or may be reserved to the creator alone, and there will be no difference in legal result."

However, "the mere power to withdraw the fund cannot be accepted as equivalent to an actual withdrawal thereof." *Mitchell v. Register of Wills, supra*, at 310, 176 A. 2d at 765. See *Ghingher v. Fanseen*, 166 Md. 519, 172 A. 75.

Appellee suggests that Mrs. Scott's testimony concerning the instructions given her by her mother raises doubts as to whether Mrs. Smith intended to withdraw any money from the account or merely prevent the appellee from doing so. Part of Mrs. Scott's testimony was as follows:

> "Q. (By Mr. Campanaro) Now, you mentioned something about your husband going to the building association to get a slip to withdraw the money from the building association. A. No, sir, I didn't say that. I said my husband made a visit to the building and loan to have the money frozen so that Mr. Bowman couldn't withdraw any of the thousands. He withdrew a thousand, with bills he didn't pay, and that's why my husband went—to explain the situation.

(The Court) To tell them to not let him withdraw any more money? A. Yes, sir.

Q. (By Mr. Campanaro) But you did have a slip—
A. They suggested we do that."

Assuming that Mrs. Smith actually did instruct her daughter to withdraw the funds, appellant cannot complain of Bowman's failure to surrender the passbook as Mrs. Smith was no more entitled to its exclusive possession than Bowman was entitled to keep it for his own purposes. In *Fairfax v. Savings Bank,* 175 Md. 136, 144, 199 A. 872, 876, which involved the same type of savings account, we announced:

"After its inception, the trust could not be terminated, in whole or in part, except in the manner provided. The fact that the trust could be so ended as to all or part of the fund, by one of the beneficiaries in the exercise of the power conferred on each independently, did not give either complete control. Each possessed the power, but its exercise by one was always in subordination to any prior exercise by the other."

Appellant argues that Mrs. Smith did all that she could have done to obtain possession of the funds and that equity should regard as done that which ought to have been done. The answer to appellant's contention is simply that she did not do everything that she should have done. See *Wetzel v. Collin,* 170 Md. 383, 185 A. 117.

For the reasons outlined above the order of the lower court must be affirmed.

*Order affirmed, costs to be paid by the appellant.*