## ARBAUGH, ADM'R c.t.a. OF THE ESTATE OF WILSON E. ARBAUGH v. HOOK

[No. 267, September Term, 1968.]

*Decided June 5, 1969.*

*Motion for rehearing filed July 7, 1969; denied July 7, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, SINGLEY, FINAN and SMITH, JJ.

*C. Rogers Hall, Jr.*, with whom was *G. Edwin Robertson* on the brief, for appellant.

*William B. Dulany*, with whom were *Dulany & Davis*, on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

The plaintiff-appellant Edwin H. Arbaugh, Administrator, c.t.a. of the estate of his brother, Wilson E. Arbaugh, filed a bill in equity requesting that the Circuit Court for Carroll County impose a constructive trust in favor of the estate on the proceeds of a joint checking account withdrawn by the appellee from the Carroll County Bank & Trust Company, and on which account the names of the decedent and his landlady, Edna A. Hook (appellee), appeared as joint owners. At the conclusion of the plaintiff's case the chancellor granted the defendant's motion to dismiss the bill and it is from that action that the administrator (plaintiff-appellant) appeals.

Wilson E. Arbaugh, a bachelor, died testate on February 15, 1968, at the age of 78. He had resided at the Hook residence for approximately six years prior to his death, and he was not related to them. The late Wilson E. Arbaugh was a retired employee of the "Hamilton Register" and received a pension check from this company in the approximate amount of $50.00 per month, and a social security check in the amount of $127.00 per month; the two checks in the combined amount of $177.00 per month comprised his sole income.

On the 9th or 10th day of February, 1968, Edwin H. Arbaugh (Wilson's brother) had a discussion with Warren and Edna Hook about the payment of medical, drug, and other expenses of Wilson, since Wilson's income was only about half sufficient to pay his bills. It was agreed between the parties, according to Edwin, that the Hooks would "see about" setting up an account at Wilson's bank, i.e., Carroll County Bank & Trust Co., for the purpose

of paying his bills. Pursuant to this conversation Warren Hook, husband of the appellee, stopped at the Court Street Office of the Carroll County Bank & Trust Co., and spoke with the branch manager, Mr. Chrest, in regard to the opening of an account. Mr. Chrest stopped at the Hook house for the first time on February 12, 1968, where Wilson Arbaugh had a room, and a joint checking account was opened in the name of Wilson E. Arbaugh and Mrs. Edna A. Hook on February 13, 1968. The initial, and only, deposit in the checking account of $2,000.00 was transferred from a savings account in the sole name of Wilson E. Arbaugh at the same bank. There were two checks drawn on the checking account, viz: the first drawn by Wilson E. Arbaugh in the amount of $198.83 on February 15, 1968, and the second check drawn by Edna A. Hook, which closed the account on February 20, 1968, in the amount of $1,801.17. Wilson E. Arbaugh died on February 15, 1968, the day that he drew the first check on the account. On January 15, 1968, one month prior to his death, the decedent executed a will in which he named a number of specific legatees, one of whom was Mrs. Hook who received $1,000.00.

The checking account was in the following form:

"Wilson E. Arbaugh and Mrs. Edna A. Hook, joint owners, subject to the order of either, the balance at the death of either, to belong to the survivor"

Edwin Arbaugh, in response to a question concerning the discussion he had with the Hooks regarding his brother's expenses testified:

"* * * A. Well, discussed about expense of— Wilson expense in their home and doctor's bills and drug store bills and whatever would come in, as to how these bills was gonna be paid and according to the way we discussed it, was that Wilson's income was only about half enough to pay these bills, so, they were making arrange-

ments, we all agreed on seeing the bank where Wilson had his deposit, his deposit book on his accounts and see if it couldn't be something set up to pay these extra bills that came in, which would be approximately twice as much as his income was. So Mr. and Mrs. Hook, through Wilson, was gonna see about getting something set up at the Bank as to how they could get a hold this money to pay these bills that came due.

Q. And to your knowledge, did Mr. or Mrs. Hook carry through on this transaction?

A. Yes."

Robert E. Chrest, the bank manager, who, although called as a witness by the plaintiff was impartial in his testimony, testified concerning his conversation with Mr. Hook relative to opening a checking account for the decedent, as follows:

"Q. And did anyone ever speak to you about opening an account for Wilson Arbaugh at your Bank? A. Yes sir.

Q. Who was that person? A. Mr. Hook.

Q. Can you identify him? His full name? A. Mr. Warren Hook.

Q. And about when did he speak to you, sir? A. On the morning of February 12th, 1968.

Q. And what did Mr. Hook say to you? A. In essence, Mr. Hook said that there was a tenant at his house by the name of Mr. Arbaugh. He was a customer of our Bank and Mr. Arbaugh's monthly income didn't provide enough money for him to meet his obligations and also to have some spending money. And he was inquiring about the possibility of me stopping by at my convenience and discussing with Mr. Arbaugh the ways and procedures for opening up a checking account.

Q. Did you go to the Hook residence? A. I did, yes sir.

Q. And who met you at the door when you went to the Hook residence? A. Mrs. Edna Hook.

Q. On what day did you go there, sir? A. My first trip to the Hook residence on February 12th, the same day that I spoke to Mr. Hook. And I made a return visit the following day on February 13th.

Q. That was in 1968? A. '68, yes sir."

And, again, Mr. Chrest gave the following testimony regarding his conversation with the decedent when he visited his room in the Hook residence:

"Q. Who placed the order with the Bank? A. Mr. Arbaugh.

Q. In what form did he place the order? A. He requested that his name and Mrs. Hook's name be printed on the checks.

Q. Was there any conversation about the exact amount of money to be placed in the account when you were in the room? A. Yes, there was some conversation. When we got around to talking about the amount he wanted to open up the checking account for, as I recall, Mr. Arbaugh first intention of taking three thousand dollars out of the savings account and I suggested to him that that sounded like a lot of money. If he wasn't going to need that much money that fast to let it in there and earn interest for him. So we decided on a two thousand dollar figure."

From the record extract it would appear that Mrs. Hook, the appellee, did not testify in these proceedings and that the testimony given by Mr. Edwin H. Arbaugh and Mr. Chrest was undisputed.

It is well established law in this state that the creation of a joint bank account in substantially the trust form as represented by the joint account in this case, is a sufficient declaration of trust to raise the presumption

that the survivor takes title to any balance remaining in the account upon the death of one of the tenants. *Shirk v. Suburban Trust*, 248 Md. 114, 235 A. 2d 549 (1967); wherein a plethora of cases are cited. However, the presumption arising from the declaration of trust in creating a joint account may be rebutted or explained. In *Shirk*, this court was presented with a situation wherein the niece of the decedent, during a period of the latter's illness, was named a joint owner on both a savings and a checking account, similar in form to the account in the case at bar, so as to assist the ailing aunt in the payment of her bills and the handling of her financial affairs. Horney, J., writing the opinion for the Court stated:

> "The general rule is that the creation of a joint bank account in the form used here is a sufficient declaration of trust provided the presumption arising therefrom is neither rebutted nor explained. *Blair v. Haas,* 215 Md. 105, 137 A. 2d 145 (1957); *Tribull v. Tribull,* 208 Md. 490, 119 A. 2d 399 (1956); *Whittington v. Whittington,* 205 Md. 1, 106 A. 2d 72 (1954); *Milholland v. Whalen,* 89 Md. 212, 43 Atl. 43 (1899). See also *Jones v. Hamilton,* 211 Md. 371, 127 A. 2d 519 (1956); *Bierau v. Bohemian Building, Loan and Savings Asso.,* 205 Md. 456, 109 A. 2d 120 (1954); *Hancock v. Savings Bank of Baltimore,* 199 Md. 163, 85 A. 2d 770 (1952). But, as stated in *Shook v. Shook,* 213 Md. 603, 607, 132 A. 2d 460, 462 (1957) —
>
>> '[t]he entry may be explained and the intention indicated may be rebutted. It is always open to the executor or administrator [of the estate] of the decedent or the parties in interest to show that the purpose of the declaration of trust was not what it, in form, appeared to be. The rebuttable presumption is that created by the execution of the transfer, and the burden of proof is on those seeking to rebut such presumption.'

"To the same effect, see *Coburn v. Shilling*, 138 Md. 177, 113 Atl. 761 (1921); *Ragan v. Kelly*, 180 Md. 324, 24 A. 2d 289 (1942); *Kuhl v. Reese*, 220 Md. 459, 154 A. 2d 712 (1959). And see *Owings v. Owings*, 233 Md. 357, 196 A. 2d 908 (1964). In the *Ragan* case, where the facts were quite similar to those in the case at bar, we had occasion to say (at p. 334) that '[f]rom all the facts and circumstances, as they appear from the evidence * * *, the conclusion is unescapable that the legal effect of the entry on the bank book * * * was intended to, and did, create a special trust for a definite and specific purpose, and the trust came to an end upon the death of the * * * [original owner].' " *Id.* at 118-119.

See also *Scott v. Bowman*, 253 Md. 55, 251 A. 2d 598 (1969).

We think *Shirk* is dispositive of the case at bar. In *Shirk* as in the instant case, the court was not concerned with any confidential relationship and while recognizing that the presumption that the declaration of trust existed in favor of the surviving tenant, found that from all of the facts and circumstances as they appeared from the evidence that the presumption was explained away and rebutted. We think that on the basis of the evidence set forth in the record in this case, the conclusion is ineluctable that the decedent intended to create, by the joint account, a special trust for a definite and limited purpose which terminated upon his death.

The evidence with respect to the intent of the decedent is clear and undisputed. We are impressed by the fact that this was a checking account, which by its very nature presupposes withdrawals of some frequency, the decedent's savings account already being in existence. We are also persuaded by the colloquy between Mr. Hook and Mr. Chrest, the bank manager; between Mr. Chrest and the decedent; and between the Hooks and the decedent's

brother, that the sole purpose of creating the joint checking account was to facilitate the payment of the decedent's bills, at a time when he was physically ill. The fact that after discussing the problem about paying his bills with Mr. Chrest, the decedent agreed that $2,000.00 instead of $3,000.00, would be sufficient for his needs, is evidence of the specific and limited purpose of the trust. There is no evidence that the decedent ever intended to make a gift of the bank account to Mrs. Hook. He had remembered her in his will executed less than 30 days prior to the creation of the account, by a bequest of $1,000.00, and there had been no change in circumstances in the intervening period.

It is quite apparent in reading the briefs of counsel and the remarks of the chancellor below, that an egregious concern was demonstrated by both the court and counsel over the question of whether or not a confidential relationship existed, and in the absence of the finding of such a relationship, the court appeared to assume that the presumption of intent to vest ownership in the surviving tenant was literally unassailable. Such, however, is not the law and as we have already stated, the only evidence adduced in this case showed an intent on the part of the decedent to establish the joint account for a limited purpose.

*Order dismissing bill of complaint reversed, and case remanded for passage of a decree in conformity with this opinion. Appellee to pay costs.*