# SHAFFER *v.* LOHR

[No. 195, September Term, 1971.]

*Decided February 9, 1972.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Peter R. Hartogensis,* with whom were *Wheeler, Korpeck & Nadonley* on the brief, for appellant.

*George E. Krouse,* with whom were *William M. Canby* and *Miller, Miller & Canby* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

This dispute between two sisters over the ownership of funds withdrawn from the savings account of their

deceased mother will naturally lead to a review of the Maryland cases which have developed a distinction between rights which may be asserted by a co-owner or surviving owner of a savings account in two names. The critical issue in most of these cases is whether or not there was evidence of an intention by the depositor to bring a trust relationship into being or to make a perfected *inter vivos* gift.

A summary of the material facts which underlay the controversy will lend understanding to our consideration of the applicable law. Blanche Cullers Shaffer (Mrs. Shaffer) and Marie Cullers Lohr (Mrs. Lohr) are the daughters of Sena G. Cullers, who died testate, domiciled in Garrett County, Maryland, on 18 December 1969. Mrs. Cullers' will named Mrs. Shaffer and Mrs. Lohr as executrices and as residuary legatees of her estate, in equal shares.

At the date of Mrs. Cullers' death there was $22,689.54 on deposit in a joint savings account which had been opened by her on 8 October 1965 at The Garrett National Bank (the Bank), Oakland, Maryland. The passbook was in the names of "Mrs. Sena G. Cullers or Mrs. Blanche Shaffer," the names having been handwritten in ink. Below the names appeared the phrase, "Either or the survivor" which had been imprinted with a rubber stamp. There was printed on the passbook the legend, "No payments can be made or money withdrawn without presentation of this book."

On deposition, Mrs. Shaffer testified that the savings account was opened in October 1965. The initial deposit was $4,360.00, which Mrs. Shaffer believed to have been the proceeds of the sale of farm implements or cattle, sold by her mother. Mrs. Shaffer said she was not present when the account was opened, but signed a signature card which was sent to her by mail. She thought that a deposit of $17,821.97 made in 1966 represented her mother's share of the proceeds of the sale of a farm which had been owned by her father at the time of his

death. She admitted that she had made no deposits or withdrawals during her mother's lifetime, and had never had possession of the passbook.

Mrs. Cullers kept the passbook until her death, when it was found among her personal effects by Mrs. Lohr and Mrs. Shaffer. While Mrs. Cullers' will was admitted to probate by the Orphans' Court for Garrett County on 8 January 1970, it would seem that the will was filed for the limited purpose of transferring title to an automobile sold to Mr. Shaffer for $375.00 apparently in an effort to comply with Code (1957, 1969 Repl. Vol.) Art. 93, § 5-608, and that there had been no other administration of her estate. On 13 January 1970, Mrs. Shaffer made two withdrawals from the savings account, one in the amount of $21.86 and another in the amount of $200.00, and on 10 February 1970, withdrew the balance of $22,-769.34.[1] From the funds withdrawn and the proceeds of sale of the automobile she said she had paid a funeral bill of some $1,500.00, some bills owed by her mother aggregating about $200.00 and a legacy of $100.00 to her brother, Paul W. Cullers, which was provided for in the will.

On 9 March 1970, Mrs. Lohr instituted an action in equity in the Circuit Court for Montgomery County, Maryland, against Mrs. Shaffer for injunctive and declaratory relief, alleging that Mrs. Shaffer had closed the account; had refused to regard the fund as an asset of Mrs. Cullers' estate, and had declined to make distribution in accordance with the terms of the will. The bill of complaint and an amended bill of complaint failed to survive Mrs. Shaffer's demurrers. Ultimately, a second amended bill of complaint was filed, containing an expanded statement of the facts which gave rise to the controversy, which sought a declaration of the rights of the parties, the imposition of a trust on the funds withdrawn and an accounting by Mrs. Shaffer. When the

---

1. Interest in the amount of $301.66 had been credited subsequent to Mrs. Cullers' death.

case was at issue on bill and answer, Mrs. Lohr's motion for summary judgment was granted, and a decree was entered declaring that the funds on deposit in the savings account were assets of the estate of Mrs. Cullers, and ordering that the estate be reopened; that a trust be imposed on the funds, and that Mrs. Shaffer be required to account for the funds which she had withdrawn from the bank. It is from the order granting the summary judgment and the relief prayed that this appeal has been taken.

Mrs. Shaffer challenges the result reached below on four grounds:

> (i) That the lower court was in error in determining that there was no dispute of a material fact and that the granting of the motion for summary judgment was therefore not warranted;
>
> (ii) That Mrs. Cullers' intent was a crucial issue in the case to be determined by the trier of fact;
>
> (iii) That there was sufficient delivery to constitute a valid *inter vivos* gift; and,
>
> (iv) That the case was made moot by Mrs. Shaffer's withdrawal of the balance in the account.

We shall consider these contentions *seriatim*.

### (i)

> The lower court was in error in determining that there was no dispute of a material fact and that the granting of the motion for summary judgment was therefore not warranted

The principal thrust of Mrs. Shaffer's argument is that the material fact in dispute was the intention of Mrs. Cullers in opening the account. While intention is an element in the resolution of a dispute involving the ownership of a bank account, *Jones, Adm. v. Hamilton*,

*Adm.*, 211 Md. 371, 380, 127 A. 2d 519 (1956), it is only one of the criteria, the others being the identity of the original owner of the money on deposit and the mechanics employed to give effect to the depositor's intent.

The affidavit filed by Mrs. Lohr in support of her motion for summary judgment was essentially a repetition of the undisputed facts which we have recited, to which was added a flat statement that Mrs. Shaffer had promised to divide the fund with her. The affidavit filed by Mrs. Shaffer in support of her opposition to the granting of the motion for summary judgment was discursive and in the main unresponsive. Its important paragraphs were these:

> "2. Plaintiff is incorrect when she states Defendant never knew of the passbook prior to her mother's death. Defendant in fact knew of the existence of the account from its inception and necessarily had to know in order to sign signature cards. On several occasions decedent make remarks and took actions making it apparent she intended the account to pass to the survivor upon her death.
>
> "3. Acting under her belief and the advice of her attorneys that the joint bank account in question was not an asset of the estate, there being less than $1,000.00 in other assets of the decedent, she settled the final affairs of decedent under the Small Estate procedure of Maryland, whereby no executor was appointed and the Will was not admitted to probate.[2]
>
> "4. The Will of the decedent nominated coexecutrices, herself and her sister, the Plaintiff. No executrix has been appointed by the Orphans' Court of Garrett County. Defendant herself has not petitioned for the appointment for reasons above-mentioned. She knows of no

2. It is clear that the will was admitted, but that there was no administration whatsoever.

reason why the Plaintiff herself could not petition for the appointment.

"5. She is not, as Plaintiff and her attorneys imply, a 'passive executrix' refusing to bring an action on behalf of an estate or an executrix at all; there is no executrix and there is no estate, none having been established.

"6. She removed the funds from the bank in Garrett County before there was any litigation pending. Her reason for doing so was that she believed and it is the advice of her attorneys that she was and still is the sole owner of these funds, being survivor under a joint account with right of survivorship.

"7. She never promised to divide the funds equally with Plaintiff.

"8. She does not recall ever telling Plaintiff that no formal administration was necessary. However, she knows for a fact that Plaintiff has since consulted an attorney, so Plaintiff is quite able to reach her own conclusion about the necessity of formal administration."

It is curious here that there was no proffer of records of the Bank or of testimony of any circumstances which may have surrounded the opening of the account. The affidavit filed by Mrs. Shaffer is wholly lacking in the specificity required in our summary judgment procedure. In *Lipscomb v. Hess,* 255 Md. 109, 257 A. 2d 178 (1969), we had occasion to review summary judgment procedure under Maryland Rule 610. There we said:

"The limitations on summary judgment procedure are too well known to require elaboration. It is not a substitute for trial but a hearing to determine whether a trial is necessary, *Whitcomb v. Horman,* 244 Md. 431, 224 A. 2d 120 (1966) ; *Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A. 2d 563 (1956), when there is no genuine controversy, *Pullman Co. v.*

*Ray,* 201 Md. 268, 94 A. 2d 266 (1953). The purpose of the hearing is not to determine disputed facts, but to determine whether such issues exist. *Horst v. Kraft,* 247 Md. 455, 231 A. 2d 674 (1967); *Carroccio v. Thorpe,* 222 Md. 38, 158 A. 2d 660 (1960); *Tellez v. Canton R.R. Co.,* 212 Md. 423, 129 A. 2d 809 (1957); *White v. Friel,* 210 Md. 274, 123 A. 2d 303 (1956). If facts are susceptible of more than one inference, the inferences must be drawn in the light most favorable to the person against whom the motion is made, *Lawless v. Merrick,* 227 Md. 65, 175 A. 2d 27 (1961), and in the light least favorable to the movant, *Howard Cleaners of Baltimore, Inc. v. Perman,* 227 Md. 291, 176 A. 2d 235 (1961); *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 155 A. 2d 691 (1959)." 255 Md. at 118.

We have held that a mere general denial of a plaintiff's claim is not enough to show that there is a genuine dispute as to a material fact and that general allegations which do not show the facts in detail and with precision are insufficient to prevent the entry of a summary judgment, *Frush v. Brooks,* 204 Md. 315, 320-21, 104 A. 2d 624 (1954). The facts proffered in opposition to the granting of a motion for summary judgment must not only be detailed and precise, but must be admissible in evidence, if there is to be a finding that there is a genuine dispute as to a material fact, *Mullan Co. v. International Corp.,* 220 Md. 248, 257, 151 A. 2d 906 (1959). Even a dispute as to a fact which is not material to the controversy will not prevent the entry of summary judgment, *Meola v. Bethlehem Steel Co.,* 246 Md. 226, 239-40, 228 A. 2d 254 (1967).

As we understand it, Mrs. Shaffer contends that the issues of intention, of the creation of an *inter vivos* gift and of mootness, about which more will be said, were disputed questions of fact. If anything, they were questions

of law: when there is an absence of any evidence of clear and unmistakable intent, what intent can be deduced from the manner in which the account was opened? If there is no evidence of a delivery of the passbook, can there be a valid *inter vivos* gift? Does the closing of the account by Mrs. Shaffer, which is undisputed, make the controversy moot as a matter of law?

### (ii)

Mrs. Cullers' intent was a crucial issue in the case to be determined by the trier of fact

### (iii)

There was sufficient delivery to constitute a valid *inter vivos* gift

Judge (now Chief Judge) Hammond, speaking for the Court, summarized the rule in *Jones, Adm. v. Hamilton, Adm., supra,* 211 Md. at 380:

"The distillation of the Maryland cases is that in a contest between those claiming as co-owners or as surviving owner of a [joint] bank * * * account, the Court has sought to find who was the original owner of the money on deposit, the intention of the owner as to the fund, the mechanics employed to effectuate that intent, and their effectiveness."

For nearly three-quarters of a century, our decisions have been the progeny of *Whalen v. Milholland,* 89 Md. 199, 43 A. 45 (1899) (the first *Milholland* case) and *Milholland v. Whalen,* 89 Md. 212, 43 A. 43 (1899) (the second *Milholland* case). Both cases involved bank accounts opened by Miss Elizabeth O'Neill. In the first case, an account had been opened by Miss O'Neill at Savings Bank of Baltimore in the form, "Elizabeth O'Neill and Mary Whalen. Joint owners. Payable to the order of either or the survivor." In the second *Milholland* case, the same Miss O'Neill had opened an account at Metropolitan Savings Bank. This time she chose a

different form: "Metropolitan Savings Bank, in account with Miss Elizabeth O'Neill. In trust for herself and Mrs. Mary Whalen, widow, joint owners, subject to the order of either; the balance at the death of either to belong to the survivor."

In the first *Milholland* case, our predecessors noted that the money on deposit at Savings Bank of Baltimore was originally Miss O'Neill's and concluded:

> "* * * Always bearing in mind that the fund belonged to only *one* of the parties named as joint owners, and that you are searching for evidence tending to show a gift of that fund, or of a part of it, to a person who confessedly in the first instance owned none of it, the control retained over the *whole* of it by the original owner under the very terms of the deposit which he makes, is of great significance in repelling any inference that he intended to part with his ownership in any way whatever. Particularly is this so when the original owner retains possession of the pass-book and when the deposit is made in a Savings Bank, by the rules of which the book must be produced before the deposit can be withdrawn." 89 Md. at 203.

As a consequence, the fund on deposit was held to be an asset of Miss O'Neill's estate, despite evidence that Miss O'Neill may have intended the account to be the property of Mrs. Whalen, if she were the survivor.

A diametrically opposite result was reached in the second *Milholland* case, where the account at Metropolitan Savings Bank was in the trust form. The Court said:

> "* * * Such a declaration of trust differs widely from a gift *inter vivos* and from a *donatio mortis causa*. These, to be effective at all, require a delivery of the thing itself, and must pass the whole title, so that the donor can have no further dominion or control over it; * * *."

* * *

"\* \* \* It is the donor's act which originates the trust, and it is the intention with which he does the act that is material. The entry, unexplained, is a sufficient declaration of trust, because it indicates an intention to establish a trust; but this may be rebutted." 89 Md. at 215-16.

The narrow distinction between the rationale of the two cases is philosophical: in the first, where the creator of a joint account retains the passbook, can make withdrawals, or even close the account, he remains in a *locus poenitentiae*—a position where he can change his mind, with the result that there is no perfected gift. In the second, where he adopts the trust form, he creates a trust, which vests a present, albeit revocable, interest in the beneficiary, *Bierau v. Bohemian Bldg. Etc. Assn.*, 205 Md. 456, 468, 109 A. 2d 120 (1954). In such an instance, the retention of the passbook by the depositor is of no legal effect, *Milholland v. Whalen, supra,* 89 Md. at 216.

Later decisions have refined, but have not markedly departed from the teaching of the *Milholland* cases. Thus, written evidence of an intention to create a trust has been found where there was an appropriate entry on the records of the bank, but not on the passbook, *Sturgis v. Citizens Nat. Bank,* 152 Md. 654, 137 A. 378 (1927), as well as where there was an appropriate entry in the passbook, but not on the signature card or ledger account, *Whittington v. Whittington,* 205 Md. 1, 106 A. 2d 72 (1954). We have also held that a trust will be presumed where the trust form was adopted in substance, *Blair v. Haas,* 215 Md. 105, 115, 137 A. 2d 145 (1957) as well as when appropriate written instructions were given a bank, which the bank failed to honor, *Hancock v. Savings Bank of Baltimore,* 199 Md. 163, 85 A. 2d 770 (1952).

Similarly, a joint bank account will be regarded as an *inter vivos* trust, and survivorship will be imputed, even though the bank's entries and records are not in trust

form, if an expression of clear and unmistakable intent to create a trust can be found from the facts, *Bierau v. Bohemian Bldg. Etc. Assn., supra,* 205 Md. at 461, which may be proved by parol evidence, *Stone v. National City Bank,* 126 Md. 231, 238, 94 A. 657 (1915). The converse of this proposition is also true. Even though the account be entered in trust form, the presumption that it was intended to import survivorship may be rebutted by a showing that the trust was intended for a limited purpose, such as paying bills, *Ragan v. Kelly,* 180 Md. 324, 24 A. 2d 289 (1942), or that no right of survivorship was intended, *Shirk v. Suburban Trust,* 248 Md. 114, 235 A. 2d 549 (1967) ; *Shook v. Shook,* 213 Md. 603, 607, 132 A. 2d 460 (1957) ; *Bierau v. Bohemian Bldg. Etc. Assn., supra,* 205 Md. at 461, or that the account was set up in trust form without a request made by the depositor, *Pearre v. Grossnickle,* 139 Md. 274, 115 A. 49 (1921).

It is not necessary that the beneficiary have knowledge of the establishment of a trust for it to be valid, *Milholland v. Whalen, supra,* 89 Md. at 215-16; *Smith v. Darby,* 39 Md. 268 (1874), but if the account is not entered in trust form, and a trust cannot be otherwise established, while the possession of the passbook is some evidence of title in the person presenting it to the bank, *People's Bank v. Turner,* 169 Md. 430, 432-33, 182 A. 314 (1936), a valid *inter vivos* gift will only be found where the donor makes a distinct, unequivocal delivery of the passbook with an intent to part with ownership and make an irrevocable gift of the fund and the donee accepts the gift, *Jones, Adm. v. Hamilton, Adm., supra,* 211 Md. at 380-81.

Generally speaking, the principles applicable to joint savings accounts are equally applicable to joint checking accounts, *Arbaugh v. Hook,* 254 Md. 146, 254 A. 2d 187 (1969) and to free share accounts in savings and loan associations, *Bierau v. Bohemian Bldg. Etc. Assn., supra,* 205 Md. at 456. For a general discussion, see Katzenstein, *Joint Savings Bank Accounts in Maryland,* 3 Md. L. Rev. 109 (1939).

From the foregoing, it can be readily demonstrated that Mrs. Shaffer failed utterly to meet her burden, and that there were no disputed issues of fact for the chancellor to consider. The money in the account was entirely Mrs. Cullers'. The account was not entered in the trust form, which would have raised a presumption of a right of survivorship. Evidence of a clear and unmistakable intent to transfer a present interest in the account to Mrs. Shaffer was wholly lacking. The passbook had not been delivered by Mrs. Cullers, or accepted by Mrs. Shaffer.

### (iv)
The case was made moot by Mrs. Shaffer's withdrawal of the balance in the account

Of the four contentions, this has the least substance. The mere fact that the Bank permitted Mrs. Shaffer to close the account and that she now has possession of the fund in no way abrogates the power of an equity court to subject the withdrawn funds to a constructive trust in favor of Mrs. Cullers' estate, because equity will impose such a trust where a person holding title to property is under a duty to convey to another, if retention would result in unjust enrichment, *Siemiesz v. Amend*, 237 Md. 438, 441-42, 206 A. 2d 723 (1965); *Carter v. Abramo*, 201 Md. 339, 343, 93 A. 2d 546 (1953). We have so held in cases involving joint accounts, *Arbaugh v. Hook, supra*, 254 Md. at 147; *Haller v. White*, 228 Md. 505, 511, 180 A. 2d 689 (1962), and in *Taylor v. Henry*, 48 Md. 550 (1878), an accounting was ordered. We can conceive of no reason why the same sanctions should not have been imposed here.

*Decree affirmed, costs to be paid by appellant.*