WASHINGTON HOMES, INC. *v.* INTERSTATE
GENERAL DEVELOPMENT, INC., ET AL.

[No. 177, September Term, 1975.]

*Decided December 2, 1975.*

The cause was argued before ORTH, C. J., and GILBERT and MELVIN, JJ.

*Richard E. Ekstrand,* with whom were *Paul M. Nussbaum* and *Reichelt, Nussbaum & Brown* on the brief, for appellant.

*F. George Heinze,* with whom were *Mudd, Mudd, Munday & Heinze* on the brief, for appellees.

MELVIN, J., delivered the opinion of the Court.

This is an appeal from a January 24, 1975 Order of the Circuit Court for Charles County declaring that appellant, Washington Homes, Inc. (Washington Homes), no longer has any rights in an option to purchase "approximately 253 lots" located in an area of Charles County known as the Wakefield Neighborhood. One of the appellees, Interstate General Development, Inc. (Interstate General) was the sole original plaintiff in a suit brought in equity against Washington Homes under the Uniform Declaratory Judgment Act (codified in Courts and Judicial Proceedings Article of the Code (1974), §§ 3-401 through 3-415) seeking a declaration that Washington Homes had failed to exercise the option within the option period.

In its appeal from the January 24, 1975 Order Washington Homes argues two grounds for reversal:

"I. The trial Court erred when it, sua sponte, amended the pleadings to add a necessary party Plaintiff at a time during a hearing which was set for the sole purpose of the trial Court issuing its opinion, and prior to which time the parties had rested.

II. The trial Court erred when it held that the option agreement was too vague to be enforceable."

I

The pertinent facts concerning the disputed amendment appear to be these:

On June 23, 1972, Washington Homes, as "Purchaser", signed an "Agreement for the Sale and Development of Lots". The other party to the agreement, designated therein "Seller", was a corporation named Interstate Land Development Company, Inc. (Interstate Land), the other appellee named in this appeal. Under the agreement Washington Homes agreed to purchase from Interstate Land 253 single family residential lots of varying sizes at various prices per lot.

The agreement contained the following recitals:

"WHEREAS, Seller is the owner and developer of St. Charles Communities (St. Charles) in Charles County, Maryland, and

WHEREAS, Purchaser is desirous of acquiring 253 single family residential lots *in the Bannister Neighborhood* for the purpose of building houses on said lots for sale to the public, and Seller is desirous of selling same." (Emphasis added.)

In addition to providing for the sale of the 253 lots in "the Bannister Neighborhood", the agreement gave Washington Homes an option "to purchase approximately 253 lots in the Wakefield Neighborhood". The option clause reads as follows:

"Since the 253 lots being purchased hereunder are in the Bannister Neighborhood of St. Charles, Seller hereby gives to Purchaser an option, subject to the provisions of this paragraph, to purchase approximately 253 lots in the Wakefield Neighborhood (under the same terms and conditions as this Agreement, excepting those provisions relating to charges for sewer and water services, advertising and promotional incentives, plus any extraordinary items, it being understood that Seller is to notify Purchaser of such additional

costs, if any, no later than 60 days prior to the expiration of this option) at a price not in excess of 110% of the price per lot in varying sizes being paid hereunder. This option shall continue for a period of two years from the date of this Agreement, and if not exercised in writing on or before such time it shall automatically expire and be of no further force and effect."

By a purchase agreement dated March 29, 1973, while the option was still unexercised, Interstate Land sold its interest in the *Bannister Neighborhood* property to Interstate General. On the same date a deed was executed by Interstate Land conveying the Bannister Neighborhood property to Interstate General. The deed was duly recorded among the land records of Charles County on April 9, 1973. By the terms of the March 29, 1973 agreement Interstate Land assigned to Interstate General the "Contract dated June 23, 1972, between Seller [Interstate Land] and Washington Homes, Inc. [appellant]" and Interstate General agreed to comply with the terms of the assigned contract. However, the assignment specifically excluded Interstate Land's "rights, remedies, obligations concerning options on land outside" the Bannister Neighborhood. Thus, it is clear that neither the deed nor the agreement gave Interstate General any interest whatsoever in the Wakefield Neighborhood property, nor did they affect in any way the respective rights of Interstate Land and Washington Homes in the option held by Washington Homes on the "approximately 253 lots in the Wakefield Neighborhood".

The bill of complaint filed by Interstate General on September 6, 1974, alleged that it was the assignee of the June 23, 1972 agreement between Interstate Land and Washington Homes. Washington Homes' answer to the bill of complaint stated that it was "without knowledge and, therefore, neither admits nor denies" that Interstate General was the assignee of the June 23, 1972 agreement.

At trial, counsel for Washington Homes persisted throughout that the only plaintiff in the case, Interstate General, was "the wrong corporation to bring the suit".

Counsel for Interstate General was just as persistent that Interstate General *was* the proper party to bring the suit. At the end of the plaintiff's case counsel moved for a dismissal on that ground. The following colloquy then took place between the trial judge and counsel for Washington Homes:

"THE COURT: If I deny your motion, are you going to have any evidence?

MR. NUSSBAUM: I don't think I need any, Your Honor.

THE COURT: Why don't you — I will reserve ruling on your motion and let you go ahead with your evidence.

MR. NUSSBAUM: Very well, Your Honor.

THE COURT: So as to get rid of testimony.

MR. NUSSBAUM: You are absolutely correct. I have no evidence to put on.

THE COURT: You have no evidence?

MR. NUSSBAUM: No, sir."

After final arguments to the court the trial judge held the matter *sub curia* pending receipt of memoranda from both parties. Thirty days later, on January 6, 1975, the trial judge rendered his oral opinion in open court, during the course of which he said:

"It would appear, therefore, that we still do not have the proper Plaintiff in this case, Plaintiff having been amended to Interstate General Development, Inc., except that somewhere in these proceedings it is indicated that Interstate General Development, Inc., is the owner of all the stock issued and outstanding in Interstate Land Development Company, Inc.

*I would think that for the case to be properly before the Court that Interstate Land Development Company, Inc. should be made a party Plaintiff in these proceedings.* (Emphasis supplied).

Is there any objection to amendment?"

Counsel for Interstate General said "We have no objection whatsoever to the proposed amendment . . . ." Counsel for Washington Homes, however, did object to the amendment. At the trial judge's request he stated his reasons for objecting:

"MR. NUSSBAUM: My reason, Your Honor, is that in the companion case,[1] Equity Number 3694, the Plaintiff has recently filed an amended bill of complaint. I have, I think, within the last week propounded interrogatories upon the Plaintiff, seeking the answers to numerous interrogatories, among which is this particular question, and I feel that until the Plaintiff under oath in response to interrogatories, propounded by me in Equity 3694 is going to answer questions as to the corporate relationship, I feel that I have a right, if not altogether a

---

1. The "companion case" (Equity No. 3694) is a suit between the same parties (i.e., Interstate General and Washington Homes) wherein Interstate General, on the strength of its assignment and deed from Interstate Land, sought specific performance of the June 23, 1972 Agreement wherein Washington Homes agreed to purchase from Interstate Land 253 lots in the *Bannister Neighborhood.* The two cases had been consolidated for trial and the trial, which took place on December 6, 1974, began as a trial of the issues in both cases. During the trial, counsel for Washington Homes brought out that the bill of complaint in the specific performance case alleged that Interstate Land "is the owner and developer of St. Charles Communities in Charles County". He therefore objected to the introduction into evidence of the deed from Interstate Land to Interstate General as being "an attempt now to rebut the pleadings" and as being "contrary to the pleadings". The trial judge agreed that amendment was needed and granted Interstate General "fifteen days in which to amend the bill of complaint" and granted Washington Homes fifteen days "to file responsive pleadings" to the amended bill of complaint. The parties then proceeded with the trial of the issues in the declaratory judgment case, which is the case *sub judice* in this appeal.

duty, to oppose any amend-
ment at this point."

Counsel for Interstate General responded:

"MR. MUDD: Your Honor, in response to that, I think the Court has correctly heard the testimony under oath in this case, that Interstate Land Development Company stock is entirely owned by Interstate General Development, Inc., and that being under oath, again in an effort to simply get to the basic issue as to whether or not an option was exercised and is still in existence, I think any further delay would be just a farce from the Court."

The trial judge thereupon overruled the objection and said, "I will ... permit the addition of Interstate Land Development Company, Inc. as a party Plaintiff in the proceedings". The judge then continued with his oral opinion in which, without deciding whether the option had been exercised, he concluded that the option clause was too vague and indefinite to be enforceable. This was followed by the written Order, dated January 24, 1975, and entered on January 27, 1975, from which Washington Homes has taken this appeal.

It is clear that Interstate General had no legally recognizable interest in the option agreement. It therefore was not a proper party to bring declaratory judgment proceedings. This fact, however, was not clear to appellees' trial counsel. It is apparent from the record that throughout the trial below they mistakenly believed that the March 27, 1973 purchase agreement between Interstate General and Interstate Land effectively assigned to the former the latter's interest in the option agreement contained within the June 23, 1972 Agreement between Interstate Land and Washington Homes. In his brief to this Court counsel for

appellees (one of the same counsel who represented Interstate General at trial) said: *"This writer did not notice that exclusion and argued accordingly. That mistake was not perpetuated by the trial Court who upon considering the record, pointed out the need to add Interstate Land Development Company, Inc. as a Party Plaintiff."* (Emphasis added).

We note at the outset that both parties to this appeal seem to have proceeded on the assumption that an amendment was actually made adding Interstate Land as a party plaintiff.

However, so far as the record reveals, all the trial judge did *sua sponte* was to state the need for an amendment [2] and say he would "permit" it. Md. Rule 320 d 2 permits an amendment to be "made orally in open court". We find nothing in the record indicating that the amendment was actually made even orally. Counsel for Interstate General at no time requested an amendment and after being informed by the trial judge that he would "permit" one, said nothing further concerning it; nor do any of the pleadings filed in the case prior to the entry of the final order on January 27, 1975,[3] indicate, by interlineation or otherwise, that Interstate Land ever became a party to the proceedings.[4]

---

**2.** Zell v. Zell, 12 Md. App. 563, 565 (1971), is authority for the proposition that amendments "may properly be suggested by the court in the interest of justice."

**3.** Md. Rule 320 c 1 provides: "In a case heard before the court without a jury, any amendment may be made at any time *before a final judgment or decree is entered*". (Emphasis added.)

**4.** See Lohrfink v. Still, 10 Md. 530 (1857) and Scarlett v. The Academy of Music, 43 Md. 203, 208 (1875), for the proposition that "a permission to amend does not, *per se*, amount to an amendment". These cases were, of course, decided long before amendments were allowed to be made orally in open court without leave of court. See present Rule 320 d 1 ("An amendment may be made without leave of court subject to the right of objection made pursuant to Rule 320 d 5") and present Rule 320 d 2 ("An amendment shall be made in writing, except when made orally in open court"). Both of these rules became effective July 1, 1974. It seems doubtful, however, even under the liberalized amendment rules, where the court *sua sponte* suggests an amendment and counsel for one party says he has no objection to the amendment, that counsel has thereby, without more, "made" the amendment "orally" or otherwise. We find it unnecessary to decide whether the court itself may *sua sponte* effect an amendment or, if it may, whether the trial court did so in the instant case.

Nevertheless, since the point was not argued, and since we dispose of the appeal on another ground, we shall assume, without deciding, that an amendment was actually made adding Interstate Land as a party plaintiff. The question, then, is whether it was reversible error to have permitted the amendment under the circumstances. Appellant argues that it was. We agree.

Maryland Rule 320 b 1 provides in pertinent part:

> "... *When an amendment is made to correct nonjoinder or misjoinder, some one of the original plaintiffs and some one of the original defendants must remain as parties to the action.*" (Emphasis added.)

Our interpretation of this part of the rule is that an amendment to correct nonjoinder or misjoinder may not be made unless at least one of the original plaintiffs *and* at least one of the original defendants would, after the amendment is made, remain in the case as *proper* parties to the action.

In the case at hand, the amendment (assuming it to have been made) purported to add Interstate Land as a proper party plaintiff, leaving Interstate General still in the case as the original plaintiff. The clear *effect* of the amendment, however, was not simply to add Interstate Land as a party plaintiff, but, instead, to substitute it for Interstate General, the only original party to the action. Interstate General as a separate legal entity, as the trial court correctly held, had no rights under the option and was not a proper party to the action. Under these circumstances the mere fact that Interstate General's name "remained" in the caption of the case as a party plaintiff did not satisfy the rule's requirement that "some one of the original plaintiffs ... must remain as parties to the action".

In *Illian v. Northwestern Ins. Co.*, 215 Md. 507 (1958), the executrix of one of three partners in a dress shop brought suit to recover loss from fire on a fire insurance policy that had been issued jointly to all three partners. At the time suit was brought, the other two partners were living but did not

join as party plaintiffs. The Court of Appeals, in an opinion by Judge Hammond (later Chief Judge), held that under partnership law the executrix was not a proper party to bring the action and affirmed the trial court's summary judgment in favor of the defendant insurance company. In answer to the executrix's argument on appeal that she should be permitted to amend so as to bring in the surviving partners (Houser and Farley) as parties plaintiff with her, Judge Hammond said, at p. 517:

> ". . . [U]nder Maryland Rule 320 b 2 (a) [the provisions of which are now contained in Rule 320 b 1] . . . when an amendment is allowed for nonjoinder or misjoinder, some one of the original plaintiffs and some one of the original defendants must remain as parties to the action. *Since Houser and Farley were the ones who should be plaintiffs and Illian, as executrix, has no right to be a plaintiff, or join in the action, there could be no amendment such as Illian requests.*" (Emphasis supplied.)

In the instant case, Interstate Land was the proper party to seek declaratory relief. Interstate General had no right to be a plaintiff, or join in the action; therefore, there could be no amendment such as proposed by the trial court.

Appellees' reliance on *Ehrlich v. Board of Education of Baltimore County,* 257 Md. 542 (1970) is misplaced. In that case the Board of Education of Baltimore County brought suit in 1966 against Ehrlich, a former professor at the Essex Community College, to recover for breach of an agreement whereby Ehrlich was given money for a sabbatical leave on condition that he return to teach at the college upon expiration of his leave. He had been originally employed by the Board of Education in 1957 and worked as a professor at the college until 1964 when the leave was granted. Chapter 134 of the Acts of 1961 provided that "for the purpose of administration over these colleges [including Essex Community College] the Board of Education shall constitute a board of trustees and governmental corporation vested

with the following powers . . . ." Thus, at the time the sabbatical leave was granted Ehrlich's employer was, as the Court of Appeals held, "technically the Board of Trustees, although . . . the same individuals served on both boards", at p. 547. In approving the trial court's granting of a motion to add the Board of Trustees as a party plaintiff, the Court said, at 548, "In the instant case we do not believe that there was a change in the real party in interest". The Court also noted that Ehrlich filed a counterclaim against the Board of Education in the same case, "thereby indicating that in his own mind he made no distinction between the Board of Trustees and the Board of Education, insofar as liability for a breach of this contract was concerned."

*Ehrlich* is distinguishable from the case before us in at least two aspects: 1) By Chapter 134 of the Acts of 1961, the two plaintiffs were, in legal effect, made one and the same party for "the purpose of administration over" the Essex Community College. In the instant case, the two plaintiffs are, in fact, two different legal entities. 2) Ehrlich himself demonstrated he suffered no prejudice from the amendment. In the instant case, it is apparent that in defending the suit against it, appellant (as it had a right to do) relied heavily upon its conviction that the "wrong corporation" was named as plaintiff. Counsel for appellant made it clear during the trial that if the right corporation brought the suit, his response would not merely be an answer to the bill of complaint, but a counter suit as well. Under the circumstances we cannot say that Washington Homes was not prejudiced by the amendment, coming as it did at the close of all the evidence while the trial judge was delivering his oral opinion on the merits of the case.

We conclude that, even assuming an amendment was made adding Interstate Land as a party plaintiff, it was error for the trial judge to have permitted such an amendment over appellant's objection. The amendment violated the mandatory provisions of Rule 320 b 1. It follows that it was also error for the trial court to have proceeded to declare the respective rights of Interstate Land and Washington Homes as if Interstate Land had been properly

added as a party before the court. Under the circumstances the trial court's only proper course was to deny the declaration requested and dismiss the bill of complaint. *Goss v. Hill,* 219 Md. 304, 307 (1959).

In view of our holding on the amendment issue it is unnecessary to consider the second issue raised by the appellant and we express no opinion thereon.

> *Judgment reversed; case remanded with directions to dismiss the bill of complaint; costs to be paid by appellees.*